PEOPLE v LOSEY

Docket No. 65733. Decided May 17, 1982. On application by the
defendant for leave to appeal the Supreme Court, in lieu of
granting leave to appeal, reversed the defendant's conviction
and remanded for a new trial.

Orville L. Losey, Jr., was convicted by a jury in the Eaton Circuit
Court, Richard Robinson, J., of conspiracy to commit murder.
During the trial, the prosecutor questioned the defendant about
a certain event that had happened while the victim, Losey's
former wife, was talking to one of her friends on the telephone.
Losey denied remembering the event, and the prosecutor called
the friend as a rebuttal witness to impeach the defendant. The
Court of Appeals, Cynar, P.J., and V. J. Brennan and M. F.
Cavanagh, JJ., affirmed (Docket No. 78-3340). The defendant
applies for leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held:*

The rebuttal witness's testimony, whether considered rele-
vant to an issue in the case or not, was inadmissible under at
least one of the rules governing rebuttal testimony. Insofar as
it was relevant to motive, it violated the rule that the prose-
cutor may not divide the evidence on which the people propose
to rest their case, saving some for rebuttal. The issue of motive
had been introduced in the prosecutor's case in chief, and
nothing in the defendant's case made the rebuttal witness's
testimony any more relevant to that issue.

The rebuttal evidence also contradicts the defendant's testi-
mony on cross-examination, but the device of eliciting a denial
on cross-examination may not be used to inject a new issue in
the case, and cross-examination cannot be used to revive the
right to introduce evidence that could have been, but was not,
introduced in the case in chief.

On the other hand, if the rebuttal testimony was not admissi-
ble in the prosecutor's case in chief because it was not relevant
to motive, then its use to contradict the defendant's denials on
cross-examination violated the rule that extrinsic evidence may
not be used to impeach a witness on a collateral matter.

The evidence against the defendant was not overwhelming,

and the Court will not speculate as to the effect the improper rebuttal might have had on the jury.

Reversed and remanded for a new trial.

98 Mich App 189; 296 NW2d 601 (1980) reversed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Paul F. Berger,* Prosecuting Attorney, and *C. Sherman Mowbray,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Terence R. Flanagan)* for defendant.

PER CURIAM. Improper rebuttal testimony is again the focus of our inquiry. Despite our admonitions in *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974), and *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975), we find we must again reverse a conviction on this basis.

I

Maria Losey (also known as Helen Losey) was found dead in her home on February 11, 1977. She had suffered two .22 caliber bullet wounds. The defendant, her ex-husband, was charged with murder as an aider and abettor[1] and with conspiracy to commit murder.[2]

At the subsequent jury trial, Ronald Heath testified that the defendant had asked him whether James Lafler could get rid of his wife. He brought Lafler to the defendant's house for a meeting. Money was eventually transferred by the defendant to Lafler. Lafler discussed killing Mrs. Losey with Heath. Later, Lafler was seen with a .22 caliber rifle which he threw into the Kalamazoo

[1] MCL 750.316; MSA 28.548.
[2] MCL 750.157a; MSA 28.354(1).

River, and he told William Snyder he had killed a Lansing woman. Snyder saw Lafler in possession of a check from the defendant.

The jury convicted the defendant of the conspiracy charge, but acquitted him of murder. On June 27, 1978, he was sentenced to imprisonment for a period of from 40 to 60 years. The Court of Appeals affirmed the conviction. *People v Losey,* 98 Mich App 189; 296 NW2d 601 (1980).

## II

On cross-examination of the defendant, the prosecutor inquired as follows:

"*Q.* Mr. Losey, do you know Maria Seeley?

"*A.* The name doesn't mean anything to me.

"*Q.* Do you know whether or not she may have been a friend of your ex-wife, Helen?

"*A.* I have never heard the name Seeley.

"*Q.* You don't specifically recall going to Helen's house on Dibble Street on the 4th of February, 1977?

"*A.* I don't recall it, specifically.

"*Q.* Do you recall going there on or about the 4th of February, when Helen was talking on the 'phone?

"*A.* No, I don't recall it.

"*Q.* Do you recall Helen screaming on that day?

* * *

"*Q.* Do you recall Helen screaming at that time?

"*A.* There's been several times that she screamed into the 'phone.

"*Q.* And was one of them about that time?

"*A.* Could possibly have been. It happened several times.

"*Q.* Do you recall trying to take her pants off at that time?

"*A.* No.

"*Q.* Do you recall her speaking into the 'phone, 'He doesn't believe me. I'm on my period?'

"*A.* No.

"*Q.* Do you recall her speaking into the 'phone, 'He wants to smell me?'

"*A.* You are getting a little preposterous.

"*Q.* Did you try to take her pants off on or about that day?

"*A.* I have never tried to take her pants off."

The prosecutor then proposed Mrs. Seeley as a rebuttal witness for "the impeachment of the defendant". Defense counsel objected that Mrs. Seeley's testimony would not be within the "stringently limited" nature of rebuttal. Mrs. Seeley was permitted to testify.

"*Q.* Do you recall whether you talked to her on the telephone the first week of February, 1977?

"*A.* Yes.

"*Q.* Do you recall the exact date?

"*A.* The 4th.

"*Q.* Fourth of February?

"*A.* Yes.

"*Q.* And do you recall if you called her or she called you?

"*A.* I called her.

"*Q.* And do you recall what time this was?

"*A.* I guess around 1 o'clock in the afternoon.

"*Q.* At any time while you were talking to Helen on the 'phone, did she become upset?

"*A.* Yes.

"*Q.* And how did you feel that she was upset?

"*A.* Well, I asked her. I said, 'What is going on?'

"*Q.* Why did you ask that?

"*A.* Because she was screaming.

"*Q.* Do you recall what she was screaming?

"*A.* She told me Orville was there.

"*Q.* And did she say why she was screaming?

"*A.* She said he was trying to take off her pants.

"*Q.* Orville was trying to take off her pants?

"*A.* Yes.

"*Q.* Did she say anything else about his trying to take off her pants?

"*A.* Yes.

"*Q.* What did she say?

"*A.* She told me he didn't believe she got her period.

"*Q.* Did you hear anyone else's voice?

"*A.* No.

"*Q.* Did she say anything else other than he was trying to take off her pants?

"*A.* No."

The Court of Appeals said:

"Defendant claims that the rebuttal testimony was impermissible extrinsic impeachment on a collateral matter, since the prosecutor was bound by defendant's denials on the matter.

"The prosecution argues contrariwise that the inquiries made of defendant regarding the telephone conversation between his ex-wife and the rebuttal witness were relevant to defendant's motive and that therefore the matter was not collateral and the rebuttal testimony was proper.

"The specific questions asked defendant concerning whether he had attempted to remove the victim's pants while she conversed with Maria Seeley on the telephone on February 4, and whether the decedent was screaming at that time. To rebut defendant's denials that such had occurred, the prosecution called Maria Seeley, who testified that she spoke on the telephone with the victim on February 4. Seeley said the victim sounded upset and began to scream when her ex-husband attempted to remove her pants and told Seeley that defendant did not believe her explanation that she was 'on her period' as her reason for resisting his overtures.

"It is not seriously open to question that motive was an issue in the case, more narrowly defendant's hatred

of his ex-wife on which evidence was previously adduced in the prosecution's case in chief. The cross-examination above referred to was relative to motive and provided the vital connective link to a material issue being tried which would suffice to render the now objected to rebuttal testimony admissible. *People v McGillen #1,* 392 Mich 251, 266-268; 220 NW2d 677 (1974), *People v Bauman,* 332 Mich 198, 206-207; 50 NW2d 757 (1952). As such, we decline to reverse on this ground." 98 Mich App 201-202.

We entered an order directing the prosecutor to show cause why the defendant's conviction should not be reversed on the basis that the introduction of improper rebuttal testimony prejudiced the defendant so as to deny him a fair trial. 411 Mich 864 (1981).

### III

Witness Seeley's testimony, whether considered relevant to an issue in the case or not, was inadmissible under at least one of the related rules governing rebuttal testimony. As this Court made clear in *People v Quick,* 58 Mich 321, 322-323; 25 NW 302 (1885), the prosecutor may not divide the evidence on which the people propose to rest their case, saving some for rebuttal. Insofar as the Court of Appeals is correct in holding that Ms. Seeley's testimony was relevant to the question of motive, the rule of *Quick* was violated.[3] The issue of motive had been introduced in the prosecutor's case in chief, and nothing in the defendant's case made

[3] We recognize that there may be occasional cases in which evidence that might have been admissible in the prosecutor's case in chief could be admitted in rebuttal. The prosecutor may not become aware of the evidence until after having rested. Or evidence that would have been repetitive on a point thought not to be seriously contested might be allowed in rebuttal if the prosecutor is genuinely surprised by the defendant's focusing on the point in defense.

Ms. Seeley's testimony any more relevant to that
issue.

Of course, the rebuttal evidence also contradicts
the defendant's testimony on cross-examination,
and its admission is defended on that ground.[4]
However, as we said in *People v Bennett,* 393 Mich
445, 449; 224 NW2d 840 (1975), the device of
eliciting a denial on cross-examination may not be
used to inject a new issue into the case. Similarly,
cross-examination cannot be used to revive the
right to introduce evidence that could have been,
but was not, introduced in the prosecutor's case in
chief.[5]

---

[4] *Bauman, supra,* 332 Mich 205-206, does lend support to the Court
of Appeals analysis. There we said:

"It is urged that the court erred in permitting witnesses Lawrence
A. Geise and Anna Geise to testify as to a claimed quarrel between
defendant and his wife in 1940; and in permitting the testimony of
Waldo Pease as to a claimed quarrel between defendant and his wife
during the year 1935. The record shows that on cross-examination
defendant denied that he ever hit, kicked or threatened to kill his
wife. It appears that Waldo Pease testified that 3-1/2 years before, he
saw defendant chasing his wife down a sidewalk. 'She was running
and screaming, hollering, "He is going to shoot me." I seen something
in his right hand. What it was I don't know, I saw them running in
this particular area, maybe 10 or 15 seconds.' It also appears that
Lawrence and Anna Geise testified that in the fall of 1940 defendant
and wife visited their farm. When the Baumans left the house, Geise
and wife heard Mrs. Bauman scream outside in the orchard. They
looked out and saw Harold Bauman hitting and kicking his wife. Mrs.
Bauman was lying down on the sand screaming, 'Don't kill me, don't
kill me, Harold.' This event took place 2 or 3 rods from the house. We
note that defendant Bauman did not take the witness stand to deny
any of this testimony given in rebuttal. The trial court permitted the
introduction of this evidence for the purpose of impeaching defen-
dant's truth and veracity. In our opinion it was not error to permit
the jury to hear this evidence. It was proper rebuttal evidence."

*Bauman* contains no legal analysis or citation to authority for its
conclusion. We do not think the quoted portion of *Bauman* is conso-
nant with what this Court has said in later cases, such as *Bennett,
supra.*

[5] There will, of course, be cases in which rebuttal evidence may
properly be used to contradict testimony elicited on cross-examination
where the cross-examination merely drew out the details of matters
raised by defense witnesses.

If, on the other hand, the rebuttal testimony was not admissible in the prosecutor's case in chief because it was not relevant to motive, then its admission in rebuttal to contradict the defendant's denials on cross-examination violated the firmly established rule that extrinsic evidence may not be used to impeach a witness on a collateral matter. *People v Teague,* 411 Mich 562, 566; 309 NW2d 530 (1981).

In his response to our order, the prosecutor concedes that the rebuttal was error, but asks that we nevertheless affirm because the evidence against the defendant was "overwhelming". We cannot accept the prosecutor's characterization of the evidence as overwhelming. The evidence as to conspiracy relied largely on the testimony of the uncharged and immunized co-conspirator Heath. The other co-conspirator, Lafler, was acquitted of conspiracy by a different jury. We will therefore not speculate as to what effect this improper rebuttal might have had on the jury in this case.

In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the defendant's conviction and remand this case to the Eaton Circuit Court for a new trial.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.