PEOPLE v WILSON

Docket No. 56959. Submitted June 24, 1982, at Detroit.—Decided
    September 21, 1982. Leave to appeal applied for.

Bobby R. Wilson was convicted in Monroe Circuit Court, James J.
    Kelley, J., of armed robbery and of violating the felony-firearm
    statute and was sentenced. He appeals. *Held:*

    1. The trial court did not err by allowing the prosecutor to
    introduce rebuttal testimony tending to disprove defendant's
    alibi defense.

    2. The trial court did not err by allowing unrecorded testi-
    mony in narrative form.

    3. The trial court did not commit error by not giving a
    cautionary instruction *sua sponte* on the credibility of accom-
    plice testimony.

    Affirmed.

1. CRIMINAL LAW — WITNESSES — INDORSED WITNESSES — INDICT-
    MENT AND INFORMATION.

    A defendant has a right to know in advance of the trial what
    witnesses are to be produced against him, so far as then known,
    and to have any new witnesses indorsed on the information as
    soon as discovered; the object of this is not merely to advise a
    defendant what witnesses will be produced on the main charge,
    but also to guard him against the production of persons who
    are unknown, and whose character he should have an opportu-
    nity to investigate.

2. CRIMINAL LAW — EVIDENCE — REBUTTAL.

    Dividing up the testimony on which the people propose to rest

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur 2d, Indictments and Information § 60.
    81 Am Jur 2d, Witnesses § 74.
[2, 4] 29 Am Jur 2d, Evidence §§ 250, 269.
    75 Am Jur 2d, Trial §§ 145, 147, 150-152.
[3] 81 Am Jur 2d, Witnesses § 612 *et seq.*
[5] 81 Am Jur 2d, Witnesses §§ 597, 608.
[6] 29 Am Jur 2d, Evidence § 250.
    75 Am Jur 2d, Trial §§ 145, 146.
[7] 75 Am Jur 2d, Trial §§ 682, 690, 818, 866.

their case is not proper, and nothing which tends to prove the commission of the crime itself or its immediate surroundings can be classed as rebutting evidence under ordinary circumstances, if at all.

3. WITNESSES — EVIDENCE — CROSS-EXAMINATION.

A party is free to contradict the answers which he has elicited from his adversary or his adversary's witness on cross-examination as to matters germane to the issue; as a general rule, a witness may not be contradicted as to collateral, irrelevant, or immaterial matters, and, accordingly, subject to some qualifications, where a party brings out such matters on cross-examination of his adversary's witness, he may not contradict the witness's answers.

4. EVIDENCE — REBUTTAL.

Rebuttal is limited to the refutation of relevant and material evidence, hence, evidence bearing on an issue properly raised in a case.

5. WITNESSES — IMPEACHMENT — COLLATERAL MATTERS.

The device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue and both the statement and the veracity of the witness are then collateral matters and the cross-examiner is bound by the response.

6. TRIAL — WITNESSES — EVIDENCE — RULES OF EVIDENCE.

The mode and order of interrogation of witnesses and presentation of evidence are matters within the discretion of the trial court (MRE 611[a]).

7. CRIMINAL LAW — JURY INSTRUCTIONS — FAILURE TO INSTRUCT.

Generally, failure of a court to instruct on any point of law is not grounds for reversal unless such instruction was requested by the accused; however, where a case becomes a credibility battle between an accomplice and the defendant, failure to give a cautionary instruction regarding the credibility of accomplice testimony, even in the absence of a request to so charge, may constitute reversible error.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *Kenneth M. Swinkey,* Assistant Prosecuting Attorney, for the people.

*Culpepper & Sorise* (by *Dominick J. Sorise*), for defendant on appeal.

Before: CYNAR, P.J., and M. J. KAUFMAN and P. R. MAHINSKE,* JJ.

CYNAR, P.J. Defendant was convicted of armed robbery, MCL 750.529; MSA 28.797, and felony-firearm, MCL 750.227b; MSA 28.424(2), following a jury trial. He was sentenced to serve 20 to 30 years for the armed robbery conviction and 2 years for the felony-firearm conviction. Defendant appeals as a matter of right.

Defendant filed a notice of alibi 11 days before trial, listing three witnesses to support his alibi. The following day the prosecutor filed a notice of rebuttal witnesses to the alibi defense, which included Charles E. Moore.

Defendant was charged as the result of a robbery which occurred at Clark's Market in Monroe, Michigan, on February 16, 1978. The owner, Charles Clark, was robbed at gunpoint. After he had handed over his wallet, the money from the register and a pint of whiskey, the robber hit him on the head with the gun and fled. Clark initially described the robber to police as being white, about 5'6" tall and weighing about 160 pounds. He could not see the robber's face because of a black or blue cap and a bright red-orange scarf which covered the robber's face. Clark further stated that the man wore an army jacket and spoke with a southern accent and that the man had been in the store earlier that evening and had purchased a pack of Kool cigarettes. Clark testified at trial that he could not positively identify the robber, but he

* Circuit judge, sitting on the Court of Appeals by assignment.

gave his original description and added that the man could be tannish or light brown.

The prosecution's key witness was Kenneth Ray Hill, defendant's alleged accomplice. The scenario that developed became a battle of credibility between Hill and defendant, who also testified at trial. Both agreed that they had been riding about town for most of the day in Hill's car. Hill claimed defendant acquired a gun and ammunition during the day, while defendant claimed Hill asked him to purchase ammunition for an unspecified purpose. Defendant further claimed that Hill had dropped him off at his girlfriend's house between 9:30 and 11 p.m. Hill claimed that he had driven defendant to Clark's Market and that defendant had robbed the market during this time period. Hill also testified that defendant had brought a wallet to the car and that this wallet was thrown out of the car at a freeway entrance ramp.

Both men agreed that, as they were heading for Tazewell, Tennessee, they stopped at a Luna Pier, Michigan, gas station where defendant replaced a thermostat on Hill's car. While at this station, Luna Pier police saw both men, and at trial they testified that defendant was wearing a green army jacket. This testimony was corroborated by an employee working at the gas station.

The Monroe police had obtained Hill's car license plate number and traced it to Tazewell, Tennessee, where the car was registered to Hill's uncle. A Tazewell police officer, working in cooperation with the Monroe police, contacted and questioned both Hill and defendant and made other investigations. At this time, Hill implicated defendant and was himself charged in connection with the robbery of the market. When defendant heard that he was wanted in Monroe, he returned and gave himself up to the Monroe police.

Defendant's alibi was corroborated by his girlfriend, who testified that defendant was at her house between 9:30 and 11 p.m. the night the market was robbed.

In defendant's case, part of the cross-examination of defendant was as follows:

"*Q.* And did you turn yourself in?

"*A.* Yes, sir.

"*Q.* And that was February 23rd of this year?

"*A.* I think so.

"*Q.* And were you arrested at the time you turned yourself in?

"*A.* Yes, sir.

"*A.* That would have been around 9:30 in the morning?

"*A.* Yes, it was in the morning.

"*Q.* And I believe you testified on your direct examination that you were advised of your constitutional rights?

"*A.* Yes, sir.

"*Q.* By—was that by Sergeant Moore?

"*A.* Yes, I think so.

"*Q.* And was—do you recall seeing Detective Trouten at the time?

"*A.* He was there.

"*Q.* Now directing your attention to that time and place, and with those people present, do you recall telling Sergeant Moore and Detective Trouten that Kenneth Hill picked you up on February 16th at your home at around 9:30 p.m.?

"*A.* No, sir.

"*Q.* You don't remember that?

"*A.* No, sir.

\* \* \*

"*Q.* You don't recall telling them that?

"*A.* I never made no statement.

"*Q.* Okay. Do you recall telling them that you were

never in a car with Mr. Hill on Riverview Avenue on that date?

"*A.* No, sir.

"*Q.* Do you remember telling them, or agreeing, that you were in Mr. Hill's car at 10:30 p.m. on that date?

"*A.* No, sir."

In rebuttal, the prosecutor called police officer Charles E. Moore who talked to the defendant when defendant turned himself in. According to Moore, defendant indicated, regarding his whereabouts on the evening of February 16, that Hill picked him up around 9:30 p.m. and that they were planning to go south. Because it was extremely cold and the car was not heating up, they went into a Boron station on North Dixie but continued on because the station did not have a thermostat. They drove to a station at Luna Pier and, while working on the car, they were questioned by police. Defendant indicated that at 10:30 that evening he was in Kenneth Hill's car. Defendant denied being in the store on Riverview Street or knowing where it was located.

All other witnesses at trial were used either to verify defendant's and Hill's whereabouts during the evening or either to establish a chain of evidence or to support testimony given by either Hill or defendant.

## I

Defendant contends that the trial court reversibly erred by allowing rebuttal testimony in this case. We disagree. After the defense had rested, the prosecution called Charles E. Moore, a sergeant for the Monroe police department, in rebuttal. Moore had testified earlier in the trial with regard to his investigation of the robbery.

The rebuttal testimony was introduced to rebut defendant's previous statement that he was with his girlfriend between 9:30 and 11 p.m., when the market was robbed. The rule regarding rebuttal evidence by a prosecutor has developed from the often-cited opinion of Justice CAMPBELL in *People v Quick,* 58 Mich 321, 322-323; 25 NW 302 (1885), which stated:

"We have held on several occasions that the defendant has a right to know in advance of the trial what witnesses are to be produced against him, so far as then known, and to have any new witnesses endorsed on the information as soon as discovered. The object of this is not merely to advise a respondent what witnesses will be produced on the main charge. It is to guard him against the production of persons who are unknown, and whose character he should have an opportunity to canvass. It is as important to impeach a rebutting witness as any other. In the present case, however, the witnesses who were received as rebutting witnesses were not such. They were called to prove what belonged to the people's case in chief. Cases may sometimes arise where testimony which could not be had in the opening may be let in upon good cause shown thereafter. But it is not proper to divide up the testimony on which the people propose to rest their case, and nothing which tends to prove the commission of the crime itself or its immediate surroundings can be classed as rebutting evidence under ordinary circumstances, if at all."

This statement of the general rule was adopted by the Michigan Supreme Court in *People v McGillen #1,* 392 Mich 251, 265-266; 220 NW2d 677 (1974). The Court further added:

" 'A party is free to contradict the answers which he has elicited from his adversary or his adversary's witnesses on cross-examination as to matters germane to the issue. * * *

" 'As a general rule, a witness may not be contra-

dicted as to collateral, irrelevant, or immaterial matters, and, accordingly, subject to some qualifications, where a party brings out such matters on cross-examination of his adversary's witness, he may not contradict the witness' answers.' " *McGillen,* pp 266-267, citing 98 CJS, Witnesses, §§ 632, 633, pp 649, 650.

In *McGillen #1,* the defendant was tried for raping his 15-year-old daughter. Defendant testified that he had never struck his children, and defendant's wife testified that the daughter had never complained of being struck by her father. In rebuttal, the prosecutor introduced the testimony of the defendant's son, who was the victim's brother, that the victim had shown him her torn clothing and had told their mother. The brother further testified that he had seen the defendant strike the children on more than one occasion. The Court found that the evidence would be relevant to proving forcible rape and would thus have to be proven in the prosecutor's case in chief or in rebuttal which directly tends to disprove the exact testimony given by a witness. Such testimony should be limited to simple contradiction of the previous testimony. *McGillen, supra,* pp 267-268.

Another Supreme Court case relying upon the rule of *Quick* is *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975). In *Bennett,* the defendant raised an alibi defense that he was at home at the time of the crime. On rebuttal, the prosecutor called a witness who had spent time with defendant in jail. This witness testified that defendant told him he "had another fellow to kill when he got out". Answering the prosecution's claim that the testimony should be admitted to rebut the prior testimony of the defendant, the Court stated:

"The people did not respond to defendant's claim that

the testimony of Williams was only admissible as part of the case in chief. Instead they contend that '[a]s Mathew Williams' testimony was admitted to rebut the prior testimony of the defendant, the trial magistrate did not abuse [his] discretion in permitting it to stand'.

"This argument misconceives the office of rebuttal. Rebuttal is limited to the refutation of relevant and material evidence—hence evidence bearing on an issue properly raised in a case.

"Such issue of course could be one raised in the prosecutor's case in chief or one raised by way of defense, and evidence on either would be subject to rebuttal.

"But here, where the prosecutor did not offer this evidence in his case in chief, which he would have had to do if this were to be regarded as an admission or part of a scheme, it did not bear on an issue raised by the people.

"Neither does it bear on an issue raised by the defense.

"The device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue.

"Both the statement and the veracity of the witness are then collateral matters and the cross-examiner is bound by the response. *People v Hillhouse,* 80 Mich 580; 45 NW 484 (1890). We hold that Williams' testimony was not proper rebuttal." *Bennett, supra,* pp 449-450.

In *People v Parker,* 65 Mich App 592, 596; 237 NW2d 572 (1975), *lv den* 397 Mich 816 (1976), the Court noted the proper use of rebuttal evidence by a prosecutor:

"Our ruling here does not leave the prosecutor powerless to rebut an alibi defense which raises facts outside the circumstances of the crime itself. In fact, the classic rebuttal testimony involves a claim by defendant that he was at a place other than the scene of the crime at the time it occurred. The prosecutor is allowed to show through rebuttal witnesses that others were at the alibi

location and did not see defendant. Similarly, witnesses can be called to testify that they saw defendant at a third location during part of the time period involved. See *People v Tocco,* 60 Mich App 130; 230 NW2d 341 (1975); *People v Smalls,* 61 Mich App 53; 232 NW2d 298 (1975). The prosecutor has a wide range of rebuttal testimony available to him to rebut alibi testimony."

This Court has also upheld the propriety, for rebuttal purposes, of testimony by third persons as to contradictory statements made to them by a defendant. See *People v Dyson,* 106 Mich App 90, 97; 307 NW2d 739 (1981); *People v Bell,* 101 Mich App 779, 783-784; 300 NW2d 691 (1980); *People v Martin,* 75 Mich App 6, 18; 254 NW2d 628 (1977), *lv den* 402 Mich 881 (1978).

Recently, in *People v Losey,* 413 Mich 346; 320 NW2d 49 (1982), the Supreme Court reasserted the rule of *Bennett* and *McGillen #1* and reversed a conviction because of improper rebuttal testimony. In *Losey,* the Supreme Court ruled that the trial court was in error in allowing rebuttal testimony relevant to motive, thereby permitting the prosecution to divide the evidence on which the people proposed to rest their case, saving some for rebuttal. The device of eliciting a denial to inject a new issue in the case on cross-examination cannot be used to revive the right to introduce evidence that could have been, but was not, introduced in the case in chief. However, the *Losey* Court notes that there may be cases where rebuttal evidence may properly be used to contradict testimony elicited on cross-examination. We believe the case before us is such a case. The rebuttal was relevant and material to refute the issue of alibi raised by way of the defense.

The issue as to whether the trial court should have allowed rebuttal testimony of the nature we

have herein is a matter within the discretion of the trial court. *People v Ebejer,* 66 Mich App 333; 239 NW2d 604 (1976), relying on *People v Utter,* 217 Mich 74; 185 NW 830 (1921).

## II

The trial court did not err by allowing unrecorded testimony in narrative form. The mode and order of interrogation of witnesses is governed by MRE 611 which provides:

"(a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

The rule is consistent with previous case law in that it does not spell out detailed rules to govern the mode and order of interrogation, and it does not specify a particular format for presenting evidence. All matters laid out in the rule are within the discretion of the trial court. See *Bennett, supra,* p 452 (FITZGERALD, J., *dissenting),* and *People v DerMartzex,* 390 Mich 410, 415; 213 NW2d 97 (1973).

Cases relying upon the rule, however, generally question the judge's decision as to the order of proofs or to prevent possible harassment of witnesses. See, *e.g., People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973); *Coburn v Goldberg,* 326 Mich 280; 40 NW2d 150 (1950).

In the present case, the trial court permitted the prosecution to bring out the circumstances of the

statement. The pertinent portion of that testimony was brought out by way of question and answer:

"*Q*. Did he indicate anything to you in his statement about ever being on Riverview Avenue?

"*A*. I asked him about—in fact I pointed out exactly where the store was, the street, the road, because he had stated he had never been on Riverview and didn't know anything about that store, didn't even know where it was at, didn't even know the area.

"*Q*. Okay. Now did he indicate to you his whereabouts about 10:30 that evening?

"*A*. Yes. He was with Kenneth Hill. He was in his car."

Defendant further challenges Moore's failure to accurately record or recount the oral statement from accurate notes made contemporaneously with the police investigation. Moore's testimony was used to rebut statements made by defendant which were inconsistent with those given earlier. Failure to make written notes was a matter for the jury to consider.

MRE 611(a) allows the court to exercise reasonable control over the mode of interrogating witnesses. Nothing in the rule specifically precludes testimony because of its narrative form. It rests within the sound discretion of the trial judge to determine whether a witness will be required to testify by question and answer or will be permitted to testify in narrative form. There is no evidence that this testimony was other than an accurate recollection of the events as told to Moore. There was no abuse of discretion in allowing Moore to testify in a narrative form.

## III

The trial court did not commit error by not *sua*

*sponte* giving a cautionary instruction on the credibility of accomplice testimony.

The general rule regarding jury instructions is that failure of the court to instruct on any point of law is not grounds for reversal unless such instruction was requested by the accused. MCL 768.29; MSA 28.1052; *People v Burden,* 395 Mich 462; 236 NW2d 505 (1975); *People v Hanna,* 85 Mich App 516, 521; 271 NW2d 299 (1978), *lv den* 406 Mich 893 (1979). See, also, *People v Zesk,* 309 Mich 129; 14 NW2d 808 (1944); *People v Dumas,* 161 Mich 45; 125 NW 766 (1910). The Supreme Court created an exception to this general rule in *People v McCoy,* 392 Mich 231, 240; 220 NW2d 456 (1974):

"For cases tried after the publication of this opinion, it will be deemed reversible error * * * (2) to fail upon request to give a cautionary instruction concerning accomplice testimony and, if the issue is closely drawn, it may be reversible error to fail to give such a cautionary instruction even in the absence of a request to charge."

The Court subsequently discussed *McCoy* in *People v Atkins,* 397 Mich 163, 171-172; 243 NW2d 292 (1976):

"In *People v McCoy,* 392 Mich 231, 236-238; 220 NW2d 456 (1974), this Court dealt with a related area of jury instructions regarding the credibility of accomplices. A majority of this Court therein held prospectively that it would be reversible error 'to fail upon request to give a cautionary instruction concerning accomplice testimony and, if the issue is closely drawn, it may be reversible error to fail to give such a cautionary instruction even in the absence of a request to charge'. This holding does not require reversal in the instant case, nor are we of the opinion that in the interests of justice it should be so extended. First, the

*McCoy* rule under discussion was given prospective application for the reason that it went beyond long-established Michigan precedent to the effect that special instructions regarding credibility was a matter within the sound discretion of the trial court. Second, there was no imbalance in the instructions given in the instant case. In *McCoy,* error was found in the trial court's failure to balance care and caution language actually used in the instruction on alibi with similar language relating to the accomplice who testified against the defendant. Third, the jury in the case at bar was fully apprised of the criminal past, and possible motivation of [the accomplice witness]. It would not be an unfair assessment of the record herein to say that as much testimony was elicited on the issue of [the accomplice's] credibility as on that of defendant's guilt or innocence. Defense strategy from the outset was to put [the accomplice witness] on trial. In the face of this clear strategy, we cannot assume that defense counsel lightly disregarded the possibility of requesting a cautionary instruction or that such an instruction would have been refused if requested. Under the circumstances, MCL 768.29; MSA 28.1052, and GCR 1963, 516.1 and 516.2 are controlling." (Footnote omitted.)

The result of these two cases, when read together, is that some panels of this Court focus on the imbalance issue with regard to the instructions while other panels deal with the "closely drawn" language of *McCoy.* In *People v Till,* 80 Mich App 16, 20-22; 263 NW2d 586 (1977), *modified on other grounds* 411 Mich 982 (1982), this Court upheld a trial court's refusal to give an accomplice instruction pursuant to request of defense counsel. The Court found no imbalance in jury instructions and concluded that the *McCoy* decision was not intended to preclude all discretion of the trial judge in assessing the necessity of giving a special instruction on accomplice credibility.

In *People v Hanna, supra,* the Court upheld a

trial judge's failure to *sua sponte* give a cautionary instruction on accomplice testimony. The Court found no imbalance in instructions given to the jury.

Those panels of this Court which have examined the *McCoy* issue by focusing on the "closely drawn" language have initially begun by attempting to define that phrase. Generally, a case is considered to be closely drawn when the trial becomes a credibility battle between the accomplice and the defendant. See *McCoy, supra,* pp 238-239; *People v Gordon Hall,* 77 Mich App 528, 531-532; 258 NW2d 547 (1977). In the *Hall* case the victim was unable to identify the defendant. The sole testimony tying the defendant to the offense was that of an accomplice. While the defendant requested a jury instruction with regard to the testimony of his accomplice, the Court did not rely upon the trial court's refusal to give this instruction. "The language of the requested instruction was not the form of cautionary instruction anticipated by the *McCoy* court." *Hall,* p 530. The Court, however, found that the issue was closely drawn and that it was reversible error for the trial court to fail to give the cautionary instruction *sua sponte, Hall,* p 531.

Following *Hall,* two panels of this Court upheld the trial court's failure to give a cautionary instruction on accomplice testimony. While both of these panels focused on the issue of whether the case was closely drawn, both decided that the case was not closely drawn because the trial was not a credibility battle between the testifying accomplice and the defendant. See *People v Van Dorsten,* 96 Mich App 356, 362; 292 NW2d 134 (1979), *rev'd on other grounds* 409 Mich 942 (1980), and *People v Worden,* 91 Mich App 666, 684-685; 284 NW2d 159 (1979).

In the present case, defense counsel did not request a specific cautionary instruction on accomplice testimony, and the trial judge did not give one *sua sponte*. However, a general instruction on credibility of witnesses was given twice. The court also gave a modified alibi instruction. This instruction was modified in that it varied from the recommendation of the Michigan Criminal Jury Instructions for such an instruction. The trial court instructed:

"As previously mentioned, the defendant claims an alibi as to both offenses charged. If you have a reasonable doubt as to whether the defendant was present at the scene of the alleged crime, then you must find the defendant not guilty of any crime.

"The people have the duty of proving beyond a reasonable doubt that the defendant was present. The defendant does not have the burden of proving that he was not present.

"It is not necessary in order to establish the commission of the crime here charged, or either one of them, that there be direct proof of the defendant's guilt by eyewitnesses who testified that they saw him commit the crime, but evidence may be, and frequently is, not direct but circumstantial in whole or in part. That is, by proof of such facts and circumstances as may establish the guilt of the defendant. However, to justify the inference of guilt from such circumstantial evidence, the facts proven from which it is asked that the guilt of the defendant be inferred must be consistent with each other, and must be proved beyond a reasonable doubt, and must not only clearly point to his guilt but must be inconsistent with any other reasonable basis upon which his innocence can be maintained."

The jury instructions provide:

"(1) Evidence has been introduced that the defendant was at another place at the time of the crime charged

here and, therefore, that he could not have committed that crime.

"(2) The prosecution has the duty of proving beyond a reasonable doubt that the defendant committed the offense charged. The defendant has no burden of proving that he was someplace else.

"(3) You, alone, are the determiners of the facts in this case, and you are to make that determination from all of the facts and circumstances shown by the evidence.

"(4) If you have a reasonable doubt whether the defendant was present at the time and place of the crime charged, then you must find him not guilty." CJI 7:2:01.

"Further, if the evidence establishes that the defendant was at another place and could not have committed the crime, this is a perfect defense and you must find the defendant not guilty." CJI 7:2:02.

Reviewing all of the instructions, we find no imbalance with regard to these instructions. Hill, the accomplice, was thoroughly cross-examined by defense counsel on such matters as the plea agreement, the sentence reduction, general credibility, and his familiarity with the Monroe area. The jury was aware of the circumstances surrounding Hill's testimony.

It is noted that, in *McCoy,* several factors were taken into account which are not present in the case before us. First, the *McCoy* trial judge denigrated the alibi defense by instructing that "an alibi is a defense that is easily proven and hard to disprove". Further, the testimony of the *McCoy* accomplice was uncorroborated and his credibility as a witness was crucial. Such is not the case here.

This is not a "closely drawn" case. The prosecution introduced other witnesses to corroborate the accomplice's testimony. Hill's credibility was placed in issue and was severely challenged by

defense counsel. The jury knew the details of the plea agreement, and they knew Hill's background. The jury instruction on alibi accurately and sufficiently instructed the jury and was substantially similar to the Michigan Criminal Jury Instructions on alibi. Given all these facts, it was not unduly prejudicial and, therefore, not reversible error for the trial judge to fail to give *sua sponte* a cautionary instruction on accomplice testimony.

The *McCoy* Court's language was not mandatory in its requirement to give the accomplice testimony instruction *sua sponte*. The decision left that matter at the discretion of the trial court. Further, the rule of *McCoy* is an exception to MCL 768.29; MSA 28.1052 and GCR 1963, 516.1 and 516.2, which require the defense counsel to propose jury instructions and to object to a trial court's failure to give those instructions for reversible error to be found. As an exception, the rule of *McCoy* should be narrowly applied and the circumstances under which it is applied should be closely scrutinized by this Court.

Affirmed.