*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STACY WAYNE ROSE, JR.,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2019

No. 342633
Wayne Circuit Court
LC No. 17-007584-01-FC

Before: M. J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Following a jury trial, defendant, Stacy Rose, Jr., was acquitted of a charge of first-degree premeditated murder, MCL 750.316(1), but convicted of the lesser included offense of involuntary manslaughter, MCL 750.321. The trial court sentenced Rose to 10 to 15 years in prison. For the reasons stated in this opinion, we affirm Rose's conviction, but remand for resentencing.

## I. BASIC FACTS

On July 30, 2017, Rose killed Robert Briscoe, Sr. by stabbing him with a knife. Earlier in the day, two of Briscoe's sons, Garrett and Tyler, had agreed to purchase Adderall pills from Rose, who left the pills in his vehicle with the expectation that the brothers would leave money. The brothers took nine pills, but only paid for two. When Rose discovered the theft, he contacted them, and they offered to meet at a middle school to settle the dispute. Rose instead went with a group of his friends to the brothers' home where he confronted their mother with a demand that she pay for the stolen pills. She refused. Multiple witnesses testified that Rose warned the brothers' mother that her son was "a dead man."[1] Later, Rose returned to the Briscoe residence as Garrett and Tyler were returning. Rose was, once again, accompanied by a large group of his friends and associates that he had recruited to go to the residence with him because

---

[1] It is unclear which of the Briscoe brothers Rose was referring to when he made this statement.

he did not want to get jumped by the Briscoe brothers. A fight broke out, and after Briscoe came out of his home to try to stop it, Rose fatally stabbed him.

The defense theory was that the killing was an accident or that it was justified because Rose was acting in self-defense. Rose testified that he had been assaulted in an unrelated incident the day before his confrontation with the Briscoes. He claimed that the prior assault—which resulted in him being thrown to the ground and kicked in the face—influenced his state of mind during the July 30 incident. Rose also testified that during the July 30 fight with Briscoe brothers he saw Tyler approaching him with a knife. He stated that he punched Tyler in the face, but then someone punched Rose, momentarily dazing him. When his head cleared, he saw the knife on the ground with Tyler rushing toward it. Rose testified that he pushed Tyler, picked up the knife with his left hand, and then punched Garrett with his right hand. Someone then punched Rose in the temple. Rose did not know who it was, but he made a backhanded swing to get clear of the combatants. When he stopped his swing, he realized that he had stabbed Briscoe. He was scared so he ran to his car, threw the knife over the hood, and left.

The jury acquitted Rose of first-degree murder, but convicted him of involuntary manslaughter.

## II. RIGHT TO PRESENT A DEFENSE

### A. STANDARD OF REVIEW

Rose argues that he was denied his right to present a defense when the trial court excluded evidence "of the character and reputation of the victim in this self-defense case . . . ." Rose did not argue below that exclusion of the challenged evidence violated his right to present a defense, so the issue is not preserved. See *People v Geno*, 261 Mich App 624, 630; 683 NW2d 687 (2004). "[U]npreserved constitutional claims are reviewed for plain error affecting substantial rights." *People v Gaines*, 306 Mich App 289, 297; 856 NW2d 222 (2014).

### B. ANALYSIS

Rose asserts that the trial court denied him his constitutional right to present a defense when it excluded evidence showing that Tyler (1) sent a text message to Rose's sister threatening to kill her family and burn down her grandmother's home, (2) displayed a knife and stated he loved it in a Facebook video, (3) had been charged as a juvenile for bringing a knife to school, and (4) was known to carry knives.

Rose contends that the evidence was relevant to show that he was fearful of the Briscoes, in general, and Tyler, in particular. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Generally, all relevant evidence is admissible. MRE 402. There are two flaws with Rose's relevancy argument. First, Tyler was not the victim of Rose's act. Second, Rose's self-defense claim was not based on a *perceived* threat of harm from Tyler, but rather on his testimony describing a *present* attack by a group of other combatants. According to Rose's testimony, Tyler posed the initial threat by approaching Rose with the knife drawn, but Tyler lost control of the knife, Rose seized it, and Rose then pushed Tyler away. When Rose then swung at the crowd, he was not acting in self-

-2-

defense against Tyler, but against other members of the mob then surrounding him. Evidence of Tyler's prior threat and association with knives was not probative of whether Rose had a reasonable belief of imminent harm from the other individuals. That is, Rose's claim of self-defense depended on the veracity of his account of an ongoing attack by other combatants. Rose's knowledge of Tyler's prior threat and history with knives did not make his description of an ongoing attack more or less probable. Accordingly, the trial court acted within its discretion by excluding the evidence of Tyler's prior conduct because it was not relevant. And because the evidence was not relevant, the trial court's exclusion of the evidence did not violate Rose's constitutional right to present a defense.

Moreover, even if the evidence was relevant, the trial court properly excluded it under MRE 404, which addresses the admissibility of character evidence. MRE 404 provides in relevant part:

> (a) **Character evidence generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of providing action in conformity therewith on a particular occasion, except:
>
> \* \* \*
>
> (2) *Character of alleged victim of homicide.* When self-defense is an issue in a charge of homicide, evidence of a trait of character for aggression of the alleged victim of the crime offered by an accused, or evidence offered by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a charge of homicide to rebut evidence that the alleged victim was the first aggressor . . . .

Although Rose asserts that the evidence of Tyler's character and reputation is admissible under MRE 404(a)(2), the homicide victim in this case was Briscoe, not Tyler. Further, there were no allegations that Briscoe had a character for aggression or that he was the first aggressor. Accordingly, the evidence of Tyler's character for aggression is not admissible under MRE 404(a)(2).

### III. PROSECUTORIAL MISCONDUCT

### A. PRESERVATION AND STANDARD OF REVIEW

Rose argues that the prosecutor's decision to impeach him with jail-call recordings after representing to his lawyer that she would not use the recording was an instance of prosecutorial misconduct. This issue is preserved because he raised it before the trial court and requested a mistrial to correct the alleged error. See *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016) (stating that a defendant preserves an allegation of prosecutorial misconduct by contemporaneously objecting to the alleged misconduct). "Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

Rose also argues that the prosecutor improperly referred to his lawyer's arguments as "red herrings" during closing argument and used an improper procedure to impeach a number of

witnesses. Although Rose objected to the cross-examination method, he did so on other grounds. Accordingly, we review these alleged instances of prosecutorial misconduct for plain error affecting Rose's substantial rights. See *Solloway*, 316 Mich App at 202. "To obtain relief generally requires a showing of prejudice—specifically, that the error affected the outcome of the lower court proceedings." *Id*.

## B. ANALYSIS

## 1. JAIL CALLS

Rose first argues that the prosecutor deprived him of a fair trial by impeaching him with a recording of a telephone call he made from jail. At trial his lawyer stated that two or three days before the start of the trial, the prosecutor handed him a disk labeled "jail calls," but she told him she did not intend to play the calls. Consequently, Rose's lawyer did not listen to any of the recorded calls. During her cross-examination of Rose, however, the prosecutor impeached him with one of the jail calls. Rose's lawyer argued that the defense was unfairly prejudiced by the prosecutor's unexpected impeachment. In response, the prosecutor recounted that when Rose's lawyer asked if she was going to use the calls, she told him that she had not made a decision. Then, after she presented her case-in-chief, Rose's lawyer asked if she was "at that point going to put in the jail calls" and she told him "no, at this point I'm not."

The court reasoned that based on the prosecutor's statements "it would be reasonable for anyone to conclude" that the prosecutor did not intend to play the jail calls in her case-in-chief, and the court found that the prosecutor did not act improperly because her only representation was that she was not going to play the calls in her case-in-chief. Despite finding that the prosecutor did not act improperly, the court indicated that it would adjourn the trial to allow Rose's lawyer to listen to the calls and decide how to proceed. Rose's lawyer asked the court to only adjourn the proceedings until "after lunch" so that it could review the call Rose was currently being impeached with by the prosecutor. The court, however, adjourned the trial until the following Monday so that Rose's lawyer could review each of the jail call individually and with Rose.

On appeal, Rose asserts that the jail calls should have been excluded or a mistrial should have been granted. In support, he directs this Court to cases addressing the prosecution's failure to disclose evidence. See *United States v Myers*, 550 F2d 1036, 1043 (CA 5, 1977) (stating that when exercising its trial court discretion to exclude undisclosed evidence the court should consider factors such as the prejudice arising from the failure to disclose, the reason for the nondisclosure, whether the harm was mitigated by subsequent events, and the weight of the properly admitted evidence); *Commonwealth v Caracino*, 605 NE2d 859, 863 (Mass App, 1993 (stating that when evaluating prejudice from "unexpected testimony," the court should determine if the disclosure was "sufficiently timely that it allowed the defendant to make effective use of the evidence in preparing and presenting his case."). But in this case it is undisputed that the jail calls were disclosed to the defense before trial. Moreover, the record reflects that the trial court's decision to adjourn the trial until the following Monday alleviated any prejudice caused by Rose's lawyer's reliance on the prosecutor's representation that she was not going to use the jail calls. Furthermore, although Rose asserts that the prosecutor reneged on her assurance that the calls would not be used, the trial court found that the representation was only that the calls would

not be used in the prosecutor's case-in-chief. That finding is not clearly erroneous because it is supported by the prosecutor's representations on the record. See *Brown*, 279 Mich App at 134. And, ultimately, "to prevail on a claim of prosecutorial misconduct, a defendant must show that he was denied a fair and impartial trial." *Solloway*, 316 Mich App at 201. "A defendant is entitled to a fair trial, not a perfect one." *Id*. The court's decision to adjourn the proceedings until Monday—a four-day adjournment—protected Rose's right to a fair trial by allowing both him and his lawyer to review the jail calls. Accordingly, Rose has not established prosecutorial misconduct warranting reversal based on the prosecutor's use of the jail-call recordings to impeach his trial testimony.

## 2. CLOSING ARGUMENT

Rose next asserts that the prosecutor acted improperly when making the following comments during her closing argument:

> Now, don't get distracted in this case by what they call red herring. A red herring is something that's used to distract you, to draw your attention from what really matters and what matters in this case is the evidence.

> Red herrings are a tactic. They're a tactic used to distract you. Don't be distracted.

There is nothing inherently inflammatory about the term "red herring." Further, it is well-established that "[a] prosecutor is afforded great latitude regarding his or her arguments and conduct at trial." *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). But it is only improper when the prosecutor's argument suggests that the defendant's lawyer "is intentionally attempting to mislead the jury." *Id*. "This prohibition is based on the negative effect such an argument has on the presumption of innocence." *Id*. In this case, the prosecutor's use of the term "red herring" did not directly relate to the defense theory, nor did it attempt to divert the jury's attention from the evidence. Thus, the argument is not improper. In addition, the jury was instructed to decide the case based upon the evidence and was instructed that the lawyer's comments are not evidence. "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017). Thus, any minimal prejudice arising from the prosecutor's general reference to "red herrings" was cured by the jury instructions.

## 3. IMPROPER CROSS-EXAMINATION

Finally, Rose argues that while cross-examining the officer-in-charge (who was not called during the prosecutor's case-in-chief), the prosecutor improperly impeached a number of witnesses using recordings of their police interview. Rose does not identify the witnesses that he believes were improperly impeached. However, at trial, Rose's lawyer objected when the prosecutor played a portion of one witness's statement to the police during the cross-examination of the officer-in-charge. In response, the prosecutor argued that she was following up with the witness's testimony that her statement was misinterpreted. The trial court remarked that playing the recording "completes the impeachment," and overruled the objection, allowing the prosecutor to question the officer about the witness's statement. The prosecutor proceeded to

play recordings of two additional witnesses' police interviews to impeach statements those witnesses made during the prosecutor's case-in-chief.

On appeal, Rose argues that the examination was improper because cross-examination should be limited to matters raised on direct-examination and to impeach the *testifying* witness's credibility. However, MRE 611(c) provides:

> A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. The judge may limit cross-examination with respect to matters not testified to on direct examination.

Accordingly, contrary to Rose's argument, the prosecution was free to cross-examine the officer-in-charge on "any matter relevant to any issue in the case, including credibility." Thus, the prosecutor did not improperly seek to cross-examine the officer. Further, although the trial court had discretion to limit the cross-examination, it was not required to do so and was, in fact, not asked to do so by Rose's lawyer.

Rose also asserts that it is improper for a prosecutor to present evidence in the defense case that should have been presented in his or her case-in-chief. In support, he provides a cursory citation to three cases: *People v McGillen*, 392 Mich 251, 266; 220 NW2d 677 (1974) (stating that it is not proper for the prosecution to divide the evidence "on which the people propose to rest their case" between their case-in-chief and their rebuttal); *People v Losey*, 413 Mich 346; 320 NW2d 49 (1982) ("[T]he prosecutor may not divide the evidence on which the people propose to rest their case, saving some for rebuttal."); and *People v Kraai*, 92 Mich App 398, 410; 285 NW2d 309 (1979) (stating that evidence that "tended only to prove the commission of the crime itself" and that "was not responsive to any issue raised by the defense" is not properly admitted during rebuttal). Here, unlike the cited cases, the prosecutor did not "save" evidence necessary for her case on for rebuttal. Instead, she impeached a number of witnesses by using a recording of an interview between the witnesses and the detective who had conducted the interview.

Furthermore, assuming arguendo, that the prosecutor's cross-examination was improper, we discern no plain error affecting Rose's substantial rights. Based on our review of the record, it does not appear that the prosecutor introduced any new evidence during the cross-examination, and Rose does not identify any instance in which the prosecutor elicited any factual assertion not raised in the case-in-chief. The cross-examination only highlighted inconsistencies between the witnesses' trial testimony and their prior statements. Because no new information was introduced, Rose cannot show that the error affected the outcome of the lower court proceedings, i.e., he cannot show that his substantial rights were affected. See *Solloway*, 316 Mich App at 202.[2]

---

[2] Rose also briefly argues that the trial court erred by denying him the right to ask leading questions of the officer-in-chief under MRE 611(d)(3). However, he does not explain how the court's refusal to allow him to use leading questions denied him his right to a fair trial, so we

## IV. ADMISSIBILITY OF ROSE'S STATEMENT TO THE POLICE

### A. STANDARD OF REVIEW

Rose argues that the trial court erred by denying his request to play his entire police statement after the prosecutor impeached him with a clip from his interview with the police. The trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015).

### B. ANALYSIS

A statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ." MRE 801(d)(1)(B). Rose argues that the prosecutor suggested that he fabricated his explanation of the stabbing after hearing the testimony of the prosecution witnesses. However, Rose admitted that he first told the police that he did not remember what happened, only to subsequently admit that he lied about his lack of memory because he wanted to "get out of this." Rose thus had a motive to fabricate when he gave his statement, so his prior statements were not admissible under MRE 801(d)(1)(B).

The balance of Rose's statement to the police was also not admissible under the "rule of completeness." "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." MRE 106. In *People v Bowen*, 170 Mich 129, 134-135; 135 NW 824 (1912), our Supreme Court stated that "[w]here the prosecution puts in evidence a confession which is part of a conversation the accused is entitled to prove as part of his defense the entire conversation." However, "[i]n a definition of the limits of this right, there may be noted three general corollaries of the principle on which the rights rest, namely: (*a*) No utterance irrelevant to the issue is receivable. (*b*) No more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part, is receivable. (*c*) The remainder thus received merely aids in the construction of the utterances as a whole, and is not in itself testimony." *Id*. at 134-135 (quotation marks and citation omitted).

The prosecutor's use of Rose's statement focused on his initial false statement to the police that he did not remember what happened during the fight. Rose does not explain how the subsequent part of his statement, in which he admitted stabbing Briscoe in the heat and confusion of a brawl, was necessary to explain his straightforward admission that he had lied to avoid responsibility for his action. Accordingly, the trial court did not abuse its discretion by excluding the statement.

---

conclude that the issue is abandoned on appeal. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004).

## V. RIGHT TO IMPEACH WITNESS

Next, Rose asserts that the trial court improperly infringed on his right to impeach Tyler by precluding his lawyer from cross-examining Tyler regarding his youthful trainee status under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, arising from his possession of a knife and Adderall pills at school.

"The interest or bias of a witness has never been regarded as irrelevant." *People v Layher*, 464 Mich 756, 764; 631 NW2d 281 (2001) (quotation marks and citation omitted). "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless . . . (1) the crime contained an element of dishonesty or false statement, or (2) the crime contained an element of theft . . . ." MRE 609. And "[a]n assignment of an individual to the status of youthful trainee . . . is not a conviction for a crime . . . ." MCL 762.14(2). Thus, a witness's status as a youthful trainee cannot be used for impeachment under MRE 609. See *People v Crutchfield*, 62 Mich App 149, 153; 233 NW2d 507 (1975). Moreover, the legislature has directed that an individual's assignment as a youthful trainee is "closed to public inspection" and is only open to "the courts of this state, the department of corrections, the family independence agency, law enforcement personnel, and . . . prosecuting attorney for use only in the performance of their duties." MCL 762.14(4). If the legislature wanted an individual's assignment as a youthful trainee to be open to defense lawyers for use in the performance of their duties, it would have so specified. See *People v Breidenbach*, 489 Mich 1, 10; 798 NW2d 738 (2011) ("[W]hen interpreting statutes, a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.") (quotation marks and citation omitted). The trial court did not abuse its discretion by prohibiting impeachment based on Tyler's status as a youthful trainee.

## VI. CUMULATIVE ERROR

Rose argues that even if no individual error is sufficient to require reversal, the cumulative effect of the many errors justifies reversal of his conviction. Because no errors have been established, however, reversal is not warranted on the basis of cumulative error. See *People v Dobek,* 274 Mich App 58, 106; 732 NW2d 546 (2007) ("Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal.").

## VII. SENTENCE

### A. STANDARD OF REVIEW

Rose argues that the trial court erroneously scored prior record variable (PRV) 5 and offense variables (OVs) 9, 14, and 19. We review for clear error a trial court's factual findings supporting its decision to assess points for PRV 5 and for OVs 9, 14, and 19. See *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). The trial court's interpretation and application of the statutory guidelines is reviewed de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

## B. ANALYSIS

Rose contends that the court erred by scoring PRV 5 at two points. A sentencing court must score PRV 5 at two points if "[t]he offender has 1 prior misdemeanor conviction or prior misdemeanor juvenile adjudication." MCL 777.55(1)(e). A "prior misdemeanor juvenile adjudication" is defined as "a juvenile adjudication for conduct that if committed by an adult would be a misdemeanor under a law of this state, another state, a political subdivision of another state, or the Unites States if the order of disposition was entered before the sentencing offense was committed." MCL 777.55(3)(b).

Rose's presentence investigation report (PSIR) indicates that in February 2012, he pleaded to assault and battery and was placed on probation. Additional documentation from the juvenile court explained that the plea was "under advisement," and that Rose had to comply with the terms of his probation. Approximately one year later, Rose's probation was completed, and the juvenile court dismissed the petition "with prejudice." The trial court scored PRV 5 based on this "adjudication," finding that Rose had admitted guilt and the dismissal was not on the merits. The court also reasoned that it could score the offense because it was comparable to a juvenile adjudication set aside under MCL 712A.18e, an expunged conviction, or an assignment as a youthful trainee under HYTA, all of which may be considered when a court is scoring PRV 5. See MCL 777.50(4) (defining "conviction" to include assignment to youthful trainee status under HYTA, and defining "juvenile adjudication" to include "an adjudication set aside" under MCL 712A.18e or an adjudication that is expunged).

Yet, the trial court failed to recognize that, unlike an adjudication set aside under MCL 712A.18e or an expunged adjudication, the circumstances in this case do not support a finding that an adjudication was ever entered against Rose. He pleaded to assault and battery, and, rather than accepting his plea, the trial court took the plea under advisement. Then, after completing probation, the *petition* was set aside with prejudice. Because Rose's plea was under advisement and was never accepted, there is no juvenile adjudication to score under PRV 5. Because Rose has "no . . . prior misdemeanor juvenile adjudications," the trial court was required to score zero points for PRV 5.

Next, Rose argues that the trial court erred by scoring OV 9 at 10 points. A sentencing court must score OV 9 at 10 points if two to nine victims "were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). The court must "[c]ount each person who was placed in danger of physical injury or loss of life . . . as a victim." MCL 777.39(2)(a). This was not a situation where the trial court counted individuals watching a brawl from a distance as potential victims. Instead, a large group of people engaged in a melee. Rose testified to punching and pushing the Briscoe brothers. He also testified to getting hit multiple times by combatants involved in the fight. He stated that after picking up the knife, he swung his arm to clear space. Given the general chaos of the fight and the proximity of the combatants, although only one person was killed, multiple individuals were placed in danger of physical injury or loss of life. The trial court did not err by scoring OV 9 at 10 points.

Rose also asserts that the trial court erred by scoring OV 14 at 10 points. The court must assess 10 points for OV 14 if "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). When scoring OV 14, "[t]he entire criminal transaction should be considered

-9-

. . . ." MCL 777.44(2)(a). Rose argues that this variable should not be scored because there is no evidence that the individuals he led to the Briscoes' home were "offenders." For purposes of OV 14, a leader is an individual who "acted first, or gave directions or was otherwise a primary causal or coordinating agent." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (quotation marks and citation omitted). A defendant may be involved in a multiple-offender situation even if the other individuals in his or her group are not charged in connection with the crime for which the defendant was convicted. *People v Jones*, 299 Mich App 284, 287-288; 829 NW2d 350 (2013), vacated in part on other grounds 494 Mich 880 (2013). In this case, Rose recruited several supporters to accompany him to the Briscoes' home and at least one of the supporters contributed to the fight by punching the Briscoes. Consequently, the evidence supports the court's finding that Rose was the leader in a multiple-offender situation.

Finally, Rose challenges the court's decision to score OV 19 at 10 points. OV 19 must be scored at 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice . . . ." MCL 777.49(c). "Interference with the administration of justice" is a "broad phrase," encompassing acts such as "providing a false name to the police, threatening or intimidating a victim or witness, telling a victim or witness not to disclose the defendant's conduct, fleeing from police contrary to an order to freeze, [and] attempting to deceive the police during an investigation . . . ." *People v Hershey*, 303 Mich App 330, 344; 844 NW2d 127 (2013). Rose directed a witness to tell people that he had not seen Rose if anyone asked about him. It can be inferred that the purpose of the instruction was to conceal Rose's involvement in the charged crime, which qualifies as interference with the administration of justice. Therefore, the trial court did not err by assessing 10 points for OV 19.

A defendant is entitled to be sentenced based upon accurate information. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). When an improperly assessed sentencing variable results in an improperly calculated guidelines range, the defendant is entitled to be resentenced. *Id*. at 92. Here, although the trial court did not clearly err by scoring OVs 9, 14, and 19, the court did not properly score PRV5. Properly scoring PRV 5 at zero points results in a reduction of the guidelines range from 36 to 71 months, to 29 to 57 months. Accordingly, Rose is entitled to resentencing. And, although Rose argues that this matter should be remanded for resentencing before a different judge we disagree because we do not believe the current judge would have substantial difficulty putting the erroneous scoring of PRV 5 out of his mind on resentencing. See *People v Hill*, 221 Mich App 391, 398; 561 NW2d 862, 865 (1997).[3]

We affirm Rose's conviction, but remand for resentencing. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

---

[3] Because resentencing is required, we decline to review the reasonableness of the court's decision to impose a sentence outside the guidelines range.