*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTONIO MAURICE WHITLEY,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2025
11:18 AM

No. 361530
Wayne Circuit Court
LC No. 20-000935-01-FC

Before: YATES, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for (1) two counts of assault with intent to cause great bodily harm (AWIGBH), MCL 750.84(1)(a); and (2) four counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve (1) 25 to 35 years in prison for each count of AWIGBH, and (2) 5 years in prison for each count of felony-firearm.[1] We affirm.

## I. FACTS

This case arises from a shooting that occurred on Steel Street in Detroit on December 31, 2019.

## A. THE DAY OF THE SHOOTING

On the morning of the shooting, Martell Alvin was with his sister, Kimberly Alvin, at their mother's home on Steel Street. At around 10:00 a.m., Mario Harris, Martell, and Kimberly's cousin parked his minivan directly across the street from Martell and Kimberly's mother's home. Harris's minivan was facing north on Steel Street. Martell saw Harris, joined him, and sat in the

---

[1] The AWIGBH counts are to be served concurrently to each other, but consecutive to the four concurrent felony-firearm counts.

-1-

front passenger seat. The two men then smoked marijuana together. Meanwhile, Kimberly was preparing to take her grandmother to a doctor's appointment. Kimberly, her son, and her grandmother were inside a different minivan that was parked directly in front of the home, facing south. Therefore, Kimberly's minivan was directly across the street from Harris's minivan, but they were facing opposite directions.

While Kimberly was inside her van, allowing it to get warmed up, she saw a silver Chevy Impala approach from the north. The Impala stopped between the two parked minivans. Kimberly saw two individuals inside the Impala. Although she did not recognize who they were, she later identified defendant as the driver from a photo array shortly after the incident and also identified him at trial. Defendant spent some time looking back and forth between the two minivans. During this time, Harris kept asking Martell who this person was, but he could not remember what Martell said in response.

At some point, Harris noticed a long gun in the Impala, and Kimberly saw defendant retrieve a rifle from the back seat. At that point, Kimberly ducked in her vehicle, Martell told Harris to drive away, and Harris attempted to depart quickly, but because of the snowy and icy roads, the vehicle could not gain traction and was not able to move away very quickly. Harris only got as far as the next house when gunshots rang out. Martell testified that as Harris was attempting to drive away, Martell was looking back and saw defendant standing in the middle of the road shooting the rifle at them.[2]

One of the bullets struck Harris in the back, near his neck. After being shot, Harris said his body went numb, and he could not pull his foot off the gas pedal. The minivan eventually came to a stop a block or two away from the shooting. After the shooting stopped, Kimberly looked up and saw the Impala driving away. Harris was treated by emergency medical workers, and spent a couple of weeks being treated at a hospital, but he survived the shooting.

Police retrieved videos from a liquor store that was located a block east from where Harris's minivan came to a stop, and that video was admitted into evidence. The videos displayed that on the day of the shooting, at approximately 10:20 a.m., a silver Chevy Impala, with damage on the front driver's side, traveled on Steel Street. Neither an image of the driver nor the license plate of the Impala was captured on video.

At some point after the shooting, Kimberly found two cell phones lying in the middle of the street. Kimberly proceeded to turn the two phones over to the police. After a warrant was obtained, the police successfully performed a "data dump" of one of the phones. On the phone were various text messages and photos, including several "selfies" of defendant. At trial, defendant admitted that the phone was indeed his, but that he had "misplaced" it shortly after 3:00 a.m. that morning.

---

[2] Notably, Kimberly and Harris did not see defendant fire the weapon because Kimberly was ducking down in her vehicle, and Harris was focusing on driving away.

After reviewing the data from the phone, defendant was identified as the suspect. The police executed a search warrant at defendant's home in January 2020. The police noted that a silver Impala with a large dent on the driver's side door was parked at defendant's residence. At trial, defendant admitted that Chyna Smith[3] had a silver Impala that had damage on the driver's side, but he stated that he did not drive that vehicle. Defendant was arrested, and the Impala was impounded. The next day, defendant waived his right to remain silent and was interviewed by the police.

## B. THE NIGHT BEFORE THE SHOOTING

The prosecution argued that whatever occurred the night before the shooting was the basis for defendant's motive. Martell testified that the night before the shooting, he went to Smith's house where defendant was present, but he did not see defendant "face to face." Conversely, defendant testified that he saw Martell and Christopher Washington[4] at Smith's home the night before the shooting. Defendant said that "[t]hey came over to the house, drove on the grass, [and] jumped out on me." Defendant described Martell as having a gun and Washington as having "whipped out [his penis] and urinated in front of the kids." Defendant stated that Washington was being "aggressive towards me." Defendant admitted that he was upset. Following this incident, defendant sent several text messages, including the following:

- "Nigga's been around my daughter bro."

- "Why would I put our kids in jeopardy by fighting with that nigga in front of yo kids?"

- "Bro, I'm trying to talk to you, Chyna."

- "Put my baby mama on the phone please."

- "If you would just talk to me. I'm just frustrated, Chyna."

- "Ho nigga whips his dick out in front of our kids but you trippin' on me, FR Chyna."

- "MT FS trying to set me up."

- "I need a strap."

- "Yo mama would have came outside been trippin' if I was outside causing commotion and whipping my dick out RT in front of kids and clients though."

---

[3] Defendant is the father of two of Smith's children.

[4] Washington is the father of one of Smith's children.

- "If something happens to me then just know I'm not a bad guy. I just wanted to live a decent life."

- "Imma take care of my business."

- "His name is Christopher Washington. He stay on Steel with his mother Emma."

- "Her baby daddy came over today and whipped his dick out and pissed in front of the kids with his dick out."

- "But you pregnant and nigga's acting weird like they know something."

## C. VERDICT AND SENTENCE

Defendant was charged with eight counts: assault with intent to murder (AWIM) as to Harris, AWIM as to Martell, AWIGBH as to Harris, AWIGBH as to Martell, and four counts of felony-firearm. The jury acquitted defendant of the AWIM counts but convicted him of the AWIGBH and felony-firearm counts. The trial court sentenced defendant, as stated earlier. Defendant now appeals.

## D. POST JUDGMENT PROCEEDINGS

While this appeal was pending, defendant moved for an evidentiary hearing and ultimately a new trial, arguing that he was denied a fair trial when the prosecution did not disclose the fact that Martell had pending felony charges against him at the time he testified. An evidentiary hearing was held, but the trial court ultimately denied defendant's motion for a new trial.

## II. PROSECUTORIAL ERROR

On appeal, defendant first argues that the prosecutor erred by: (1) impermissibly vouching for the credibility of the witnesses during closing argument, (2) denigrating defense counsel during rebuttal, and (3) impermissibly appealing to the jury's sense of civic duty during rebuttal. Defendant further argues that defense counsel was ineffective by failing to object to these instances of misconduct. We disagree on both counts.

## A. PRESERVATION AND STANDARD OF REVIEW

"In order to preserve an issue of prosecutorial misconduct,[5] a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Of the three instances of alleged misconduct, defense counsel only objected to the comment related to civic duty. But, defense counsel did not request any

---

[5] "[T]hese claims of error might be better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015).

curative instructions regarding that alleged error. Therefore, these claims are not preserved. See *id*. Preserved claims of prosecutorial misconduct are reviewed de novo to determine whether the prosecutor's comments denied defendant a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). But, unpreserved claims of prosecutorial error are reviewed for plain error affecting defendant's substantial rights. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence." *Id*. at 448-449. Therefore, "where a curative instruction could have alleviated any prejudicial effect we will not find error requiring reversal." *Id*. at 449.

A defendant preserves the claim of ineffective assistance of counsel by, among other things, raising the issue in a motion to remand for an evidentiary hearing. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Although defendant moved for an evidentiary hearing, and one was held, the subject matter of that hearing did not include the instances of misconduct raised here. Therefore, the issue is not preserved. See *id*. When no evidentiary hearing is held on a claim of ineffective assistance, our review is limited to mistakes apparent from the record. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

## B. ANALYSIS

> "[A prosecutor] may prosecute with earnestness and vigor—indeed he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." [*People v Kirby*, 4 Mich App 201, 204; 144 NW2d 651 (1966), quoting *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935).]

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted)." *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). "Prosecutorial-misconduct issues are decided case by case, and the reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context." *Id*. at 272-273.

Defendant's first claim of prosecutorial error—that the prosecutor vouched for the credibility of the witnesses—is premised on the following comment that the prosecutor made during his closing argument:

> Those witnesses were credible. That testimony is sworn testimony, the Judge will tell you that you can consider it. You can even consider that by itself with no other evidence. But we know that there is an overwhelming amount of evidence that corroborates everything that they are saying.

"[T]he prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *Bahoda*, 448 Mich at 276. "A prosecutor may, however, argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d

16 (1997); see also *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004) ("[A] prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes.").

In this case, from the prosecutor's comments, it is clear that he never stated nor implied that his reference to the witnesses' credibility was based on any special knowledge. Instead, he was permissibly arguing that the witnesses were credible without invoking any special or secret knowledge. Therefore, defendant has not established the presence of any plain or obvious error. See *Bahoda*, 448 Mich at 276; *Thomas*, 260 Mich App at 455; *Howard*, 226 Mich App at 548.

Regarding defendant's second claim of prosecutorial error, defendant argues that the prosecutor erroneously denigrated defense counsel during rebuttal with the following remark:

> You know, there's an old saying that floats around the halls of defense attorneys. It goes something like this. If the facts aren't on your side then you argue the law. If the law is not on your side, then you argue the facts. Now if the facts aren't on your side and the law is not on your side, then you bang on the table and you create a distraction.

In the time surrounding this statement, the prosecutor addressed several points defense counsel made during his closing argument: (1) the shell casings were not tested for DNA, (2) the police did not search Martell's house, and (3) Kimberly's grandmother did not testify. The prosecutor called these points "distractions" and averred that defense counsel mentioned them "because he doesn't want to go ahead and confront the overwhelming amount of evidence." The prosecutor also noted how defense counsel questioned the ownership of the Impala and mentioned that there may have only been one shot fired. He closed with the following statement: "Don't be distracted. Don't go ahead and follow this path of these red herrings. Follow the evidence, ladies and gentlemen."

"A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). "When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client." *People v Dalessandro*, 165 Mich App 569, 580; 419 NW2d 609 (1988) (quotation marks and citation omitted). Such an argument undermines the defendant's presumption of innocence and "impermissibly shifts the focus from the evidence itself to the defense counsel's personality." *Id*. (quotation marks and citation omitted).

In this case, the prosecutor's comments were similar to that of the prosecutor in *Watson*, who also suggested in rebuttal that defense counsel was attempting to "distract" by introducing "red herrings."[6] *Watson*, 245 Mich App at 592. The *Watson* Court noted that even an otherwise

---

[6] The full prosecutor comment from *Watson*, 245 Mich App at 592, was as follows:

improper remark may not require reversal when the argument is responding to defense counsel's argument. *Id.* at 593. This Court held that "[i]t was not improper for the prosecutor to respond by emphasizing the truth of the big picture, despite defense counsel's attempts to find discrepancies between the testimony of various witnesses." *Id*. Because the prosecutors' comments from *Watson* and the instant case were very similar, the same principle applies here. Accordingly, reversal is not required. See *id*.

Defendant further argues that the prosecutor erred by appealing to the jury's civic duty. A prosecutor may not urge the jury to convict as part of their civic duty. *Bahoda*, 448 Mich at 282. These types of arguments are not allowed because they inject issues into the trial that are broader than a defendant's guilt or innocence of the charges and because they encourage jurors to not make reasoned judgments. *Abraham*, 256 Mich App at 273.

In this case, at the very end of the prosecutor's rebuttal, he stated the following:

> Long trial, ladies and gentlemen. Like to again, thank you for your attention on behalf of the People of the State of Michigan, thank you on behalf of the Wayne County prosecutor, for Prosecutor Worthy thank you, on behalf of justice, thank you.

This comment did not deny defendant a fair trial. Nowhere in the comment did the prosecutor *ask for a conviction* on the basis of justice or civic duty. Instead, the prosecutor was thanking the jurors for their attention during the long trial on behalf of many entities, including "justice."

Defendant additionally argues that the prejudicial effect of the cumulative errors from the instances of prosecutorial misconduct requires reversal. "Although one error in a case may not necessarily provide a basis for reversal, it is possible that the cumulative effect of a number of minor errors may add up to error requiring reversal." *People v Anderson*, 166 Mich App 455, 472-473; 421 NW2d 200 (1988). We review a claim of cumulative error "to determine if the combination of alleged errors denied defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). But, because we have concluded that there are not multiple

---

> Members of the jury, I know you are probably anxious to get started on your deliberations, but there were a lot of things that Defense Counsel addressed that I have got to respond to. Because the fact of the matter is, members of the jury, apparently the defense in this case is to distract you, make you look over here. Don't pay any attention to the evidence, just look over here, and don't pay any attention to the truth.
>
> You've heard the term "red herrings in the school of blue fish." When the school of blue fish is going beside—behind you or beside you, you're going to be attracted to the red herring. You just had the whole boatload of red herrings thrown at you, and it didn't change the truth. Create an issue by asking the question, I believe is this defense.

prosecutorial errors to aggregate, "a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

Defendant additionally argues that his trial counsel was ineffective by failing to object to the alleged instances of misconduct.

Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Generally, to establish a claim of ineffective assistance, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Such performance must be measured without the benefit of hindsight. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). Moreover, counsel is not ineffective by failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In this case, seeing as there was no prosecutorial error requiring reversal, any objection would have been futile; therefore, defense counsel was not ineffective for failing to object to the alleged instances of prosecutorial error. See *id*. Even assuming, arguendo, that defense counsel should have made these objections, with the overwhelming evidence of defendant's guilt, including eyewitnesses placing defendant at the scene with the rifle, defendant's phone being found at the scene, the same Impala from the scene being found at defendant's house, and defendant's admissions for motive, there is not a reasonable probability that the outcome would have been different had counsel objected. Moreover, had an objection been raised, the trial court at most would have provided a cautionary instruction to the jury that counsels' arguments were not evidence. Notably, the court in its final instructions told the jury that it could only consider the evidence and that the lawyers' statements and arguments were not evidence. "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citation omitted).

## III. ADMISSION OF GUNSHOT WOUND

Defendant further argues that he was denied the right to a fair trial when the trial court allowed Harris to show his wound to the jury. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

To preserve an evidentiary issue for appeal, the party opposing the admission of the evidence must object at trial and specify the same ground for objection that is asserted on appeal. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). In this case, defendant preserved this issue by objecting to Harris showing his injury to the jury on the basis of MRE 403. But, to the extent defendant argues on appeal that he was denied his constitutional right to a fair trial, that argument is not preserved because defense counsel never raised a constitutional issue in the trial court.

Preserved issues of whether evidence was admissible are reviewed for an abuse of discretion by the trial court. *Id*. at 113. A trial court abuses its discretion when it reaches a decision resulting in an outcome that falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Unpreserved constitutional issues are reviewed for plain error affecting defendant's substantial rights. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

When a defendant pleads not guilty to a crime, "the prosecution may offer *all* relevant evidence, subject to MRE 403, on *every* element." *People v Mills*, 450 Mich 61, 70; 537 NW2d 909 (1995) (emphasis added), mod 450 Mich 1212 (1995). "The claim that evidence that goes to an undisputed point is inadmissible has also been rejected in criminal cases." *Id*. at 71. In this case, defendant was charged with AWIM and AWIGBH on Harris. Therefore, the prosecution was entitled to offer all relevant evidence establishing that Harris was assaulted. See *id*. at 70. Clearly, the wound that Harris actually suffered from that assault would be relevant and admissible, subject to MRE 403. See *id*.

MRE 403[7] states, in pertinent part, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2001) (quotation marks and citation omitted).

Because Harris lifted his shirt to show the wound, and no photograph of the wound was admitted into evidence, it appears that review is impossible to effectuate and that the issue should be deemed abandoned. See *People v Anderson*, 209 Mich App 527, 535; 531 NW2d 780 (1995) (stating that failing to provide relevant record waives further review because an appellate court is unable to review the party's objection); *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 540; 506 NW2d 890 (1993) ("[G]enerally, the appellant bears the burden of furnishing the reviewing court with a record that verifies the basis of any argument on which reversal or other claim for appellate relief is predicated.").

Regardless, it does not appear that defendant's claim has merit. Contrary to defendant's assertion, gruesome evidence, such as photographs of injuries or wounds, is not inadmissible simply because a witness can testify about the information contained in the photographs. *Mills*, 450 Mich at 76. Moreover, that evidence is admissible to corroborate a witness's testimony, and

---

[7] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

"[g]ruesomeness alone need not cause exclusion." *Id*. The proper analysis is whether the evidence's probative value is substantially outweighed by unfair prejudice. *Id*. In this instance, the probative value of the wound seemingly could not have been substantially outweighed by unfair prejudice. First, the actual injury corroborated Harris's testimony that he had been shot. It also cleared up any confusion about where Harris had been shot because in the police body-cam video, the officer speculated that Harris was shot in the "chest area." This clarification shed light on the life-threatening nature of the injury, which was clearly at issue in this case because defendant was charged with AWIM and AWIGBH. Intent to kill may be inferred from, *inter alia*, the victim's injuries. *People v Everett*, 318 Mich App 511, 531 n 10; 899 NW2d 94 (2017). Second, it is hard to see how a fully healed wound[8] could be of such a gruesome nature that it would have acted to excite passion from the jury. There is no evidence that the wound was scarred, bloody, oozing, or otherwise overtly "disturbing." In short, defendant has failed to show that the record demonstrates any unfair prejudice from Harris displaying his wound that substantially outweighed the probative value of it. Accordingly, defendant is not entitled to relief. And because it was permissible for the jury to see Harris's actual wound, defendant has failed to show how his right to due process was impaired.[9]

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant further argues that there was insufficient evidence to support his AWIGBH convictions. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

A criminal defendant need not take any particular step or action to preserve a challenge to the sufficiency of the evidence. *People v Patterson*, 428 Mich 502, 514; 410 NW2d 733 (1987). A challenge to the sufficiency of the evidence is reviewed de novo and in a light most favorable to the prosecution to determine whether "any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007) (quotation marks and citation omitted). "All conflicts with regard to the evidence must be resolved in favor of the prosecution. Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005) (citation omitted).

### B. ANALYSIS

In this case, defendant was convicted of two counts of AWIGBH and four counts of felony-firearm. Two of the felony-firearm counts had AWIM as the predicate offense, and two of the

---

[8] We presume that the wound was fully healed because almost two years had elapsed between the time of the shooting and the time of trial.

[9] Defendant offers no argument in support of his due-process claim except for stating: "[T]he act of having Mr. Harris pull up his shirt and show the gunshot wound was substantially more prejudicial than it was probative and denied Mr. Whitely of his Due Process right to a fair trial." Therefore, defendant solely tied his due-process claim to the admissibility of the evidence.

felony-firearm counts had AWIGBH as the predicate offense. At the outset, defendant argues that the two felony-firearm convictions with AWIM as the predicate offense should be vacated because the jury acquitted him of both AWIM counts. This argument is without merit. It is well established that a jury is at liberty to render illogical or inconsistent verdicts, and can acquit a defendant of the predicate offense while still finding him guilty of felony-firearm. *People v Wakeford*, 418 Mich 95, 109 n 13; 341 NW2d 68 (1983). Indeed, the jury in this case was instructed that it could find defendant guilty of felony-firearm without rendering a guilty verdict on the predicate offense.

Defendant does not challenge any of the specific elements of AWIM or AWIGBH, except to aver that there was insufficient evidence to show that he was the shooter.[10] "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Contrary to defendant's argument, his identity was established through more than circumstantial evidence. Martell testified that when he looked back while Harris drove the minivan away, he saw defendant standing in the middle of the road, firing the rifle in their direction. Defendant complains that Martell is not credible, but that is a question for the jury; this Court is precluded from assessing credibility anew. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). Indeed, any credibility conflicts are to be resolved in favor of the verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Consequently, defendant's argument that Martell's testimony should be ignored or discounted is without merit.

Although Martell's testimony was adequate to sustain defendant's convictions on its own, there was other circumstantial evidence to support the jury's finding that defendant was the shooter. See *Wilkens*, 267 Mich App at 738 (stating that circumstantial evidence is sufficient to support a conviction). Both Kimberly and Harris saw the rifle in the car with defendant, and Kimberly saw defendant reach for and grab it. While they did not see defendant fire the weapon, they heard gunshots shortly after defendant retrieved the weapon. Additionally, defendant's cell phone was found in the middle of the street after the shooting occurred, which allows an inference that defendant was the person who stepped outside the vehicle with the rifle. The text messages on defendant's phone indicated that he was angry with Martell from an incident that occurred the night before, and defendant admitted as much on cross-examination, including that he knew Martell could be found on Steel Street. Moreover, the vehicle that was seen at the scene was later found at defendant's house. All this circumstantial evidence supports the jury's determination that defendant was the shooter; therefore, defendant's claim of insufficient evidence fails. See *id*.

## V. *BRADY* VIOLATION

---

[10] The elements of AWIM include the following: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Ericksen*, 288 Mich App at 195-196 (quotation marks and citation omitted). In order to prove AWIGBH, a prosecutor must prove "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted).

Defendant further argues that the trial court erred when it denied his motion for a new trial on the basis that, unbeknownst to defendant, Martell had pending criminal charges when he testified at trial. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

A defendant must raise an issue in the trial court in order to preserve it for appellate review. *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). In this case, defendant moved for an evidentiary hearing, and ultimately a new trial, on these grounds; therefore, this issue is preserved for appellate review. See *id*. A trial court's ultimate decision on a motion for a new trial is reviewed for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). But, its underlying constitutional rulings are reviewed de novo, and its factual findings are reviewed for clear error. *LeBlanc*, 465 Mich at 579. A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake was made. *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997).

## B. RELEVANT FACTS PRESENTED AT THE EVIDENTIARY HEARING

While this appeal was pending, defendant moved for an evidentiary hearing, and ultimately a new trial, arguing that he was denied a fair trial when the prosecution did not disclose the fact that Martell had pending felony charges against him at the time he testified.

At the evidentiary hearing, it was discovered that Martell did in fact have several gun-related felony charges pending at the time of trial: felon-in-possession, felon-in-possession of ammunition, carrying a concealed weapon, and two counts of felony-firearm. Additionally, Martell was a victim in a separate shooting incident. In that incident, it was alleged that Martell's brother was shot and killed. Martell was injured in the shooting and was the sole eyewitness to the killing. Martell was subpoenaed to appear at the preliminary examination for that case—a week before trial was to start in the instant case—but he did not appear. Martell was subsequently picked up on a witness detainer and housed in the Wayne County Jail to ensure his attendance at trial in this case. Therefore, while testifying in this case, Martell was wearing a jail jumpsuit. On direct examination, Martell explained that he was not in jail for any criminal conduct, but instead was being held because he did not want to appear at trial.

By the end of the evidentiary hearing, the prosecutor in this case admitted that he was aware of Martell's pending gun charges at the time of the trial, but defense counsel denied ever receiving any information related to Martell's pending charges. Notably, the prosecutor in this case, and the prosecutor in the case involving Martell's brother's death, both testified that Martell had not received any consideration in exchange for his cooperation in either case. Also, evidence showed that Martell's pending charges were ultimately dismissed because the complaining witness, who had retired and moved out of state, did not appear for the preliminary examination.

## C. ANALYSIS

It is undisputed that at the time that Martell testified, there were five gun-related charges pending against him. It also is undisputed that the prosecution never informed defendant or defense counsel about these pending charges. Defendant maintains that he is entitled to a new trial on two grounds: (1) the prosecution's failure to disclose the pending charges constituted a due-

process violation under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and (2) defense counsel was ineffective by failing to discover these charges and use them to impeach Martell.

"A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about the defendant's guilt." *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005); see also *Brady*, 373 US at 87. In order to establish such a due-process violation, a defendant must prove "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).

In *People v Brownridge (On Remand)*, 237 Mich App 210, 215; 602 NW2d 584 (1999), this Court held that a pending criminal charge of a prosecution witness qualifies as favorable evidence that must be disclosed. This Court explained that whether a prosecution witness has pending charges is particularly relevant to the witness's interest in testifying and may be admitted for impeachment purposes. *Id*. As an initial matter, the prosecution attempts to distinguish *Brownridge* by arguing that because the witness in that case was only under investigation—with no pending charges—the Court's pronouncement does not apply to this case. We disagree. In *Brownridge*, this Court concluded that the defendant was not entitled to any relief because the facts did not satisfy the requirements under the law for disclosure. *Id*. Therefore, any factual differences do not diminish the Court's legal pronouncements.

In this case, the trial court seemingly ruled that the first two requirements to establish a *Brady* claim were satisfied.[11] Pursuant to *Brownridge*, the trial court did not err. See *id*. Therefore, the only remaining inquiry is whether Martell's pending criminal charges constituted material evidence, i.e., whether there "is a reasonable probability, that had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Chenault*, 495 Mich at 150. The trial court ruled that "[b]ecause defendant would not be able to use the pending gun charges under MRE 609 to impeach [Martell's] credibility, defendant cannot establish that the evidence is material." Although we agree with the trial court's ultimate decision that there was not a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed, the trial court's reasoning is erroneous.

The trial court primarily relied on unpublished caselaw to rule that the evidence was not material. The principles enunciated in that caselaw are, for the most part, inapplicable. They mainly address whether pending charges are admissible under MRE 609 to impeach a witness's credibility. But, reliance on MRE 609 is wholly misplaced. MRE 609(a) governs impeachment through evidence of conviction of crime and provides in relevant part as follows:

---

[11] The trial court's opinion stated that "the People should have disclosed the pending charges against [Martell] to the defense."

-13-

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

(1) the crime contained an element of dishonesty or false statement, or

(2) the crime contained an element of theft . . . .

Simply put, MRE 609 allows impeachment of a witness through that witness's past convicted criminal conduct that involved aspects of dishonesty because that particular conduct can speak to the witness's credibility. Although MRE 609 is clearly not applicable in this case because the evidence at issue pertained to pending *charges* and not *convictions*, that is not the end of the analysis.

"Although, normally, a witness' pending charges may not be used for general impeachment purposes, the fact that a prosecution witness has charges pending is particularly relevant to the issue of the witness' interest in testifying and may be admitted for this purpose." *People v Hall*, 174 Mich App 686, 690-691; 436 NW2d 446 (1989) (citation omitted); see also *Brownridge*, 237 Mich App at 215. Indeed, "a defendant need not first demonstrate that some sort of deal exists before impeaching the witness in this manner as the cross-examination is a proper means to attempt to illicit the existence of a possible interest." *Hall*, 174 Mich App at 691.

In this instance, having a key prosecution witness with several gun-related felony charges pending at the time of trial clearly falls under the exception noted in *Hall*. The witness could have an interest in providing testimony favorable to the prosecution to curry favor in regard to the pending charges. See also *People v McGhee*, 268 Mich App 600, 637; 709 NW2d 595 (2005) ("A witness's bias is always relevant. A defendant is entitled to have the jury consider any fact that may have influenced the witness' testimony.") (quotation marks, citations, and alteration omitted). Therefore, the actual essence or character of the pending charges is largely irrelevant. The fact that the pending charges *exist* is the relevant aspect. This fact creates a potential for an ulterior incentive or motivation for the witness to color his testimony in favor of the prosecution to curry favor related to the pending charges. See *Brownridge*, 237 Mich App at 215.

Merely because evidence of Martell's pending charges would have been admissible to impeach him, that does not automatically qualify the evidence as being "material." The dispositive question is whether had that evidence been disclosed (and consequently adduced at trial), was there a reasonable probability that the outcome of the proceeding would have been different. *Chenault*, 405 Mich at 150. "A defendant need not demonstrate by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. Rather, the relevant question is whether the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *People v Christian*, 510 Mich 52, 76; 987 NW2d 29 (2022) (quotation marks, citations, and alterations omitted). Even with this less-than-a-preponderance burden, the evidence of Martell's pending charges does not rise to the level of denying defendant a fair trial or calling into question the jury's verdict.

The materiality of impeachment evidence is tied to the strength of the impeachment and the strength of the other evidence presented. See *United States v Agurs*, 427 US 97, 112-113; 96 S Ct 2392; 49 L Ed 2d 342 (1976) ("If there is no reasonable doubt about guilt whether or not the additional [evidence] is considered, there is no justification for a new trial. [But], if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.").

Importantly, the trial court's finding that there was no deal provided to Martell in exchange for his testimony is not clearly erroneous. There was no evidence to suggest that a deal was provided. The prosecutor in this case, and the prosecutor in the case involving Martell's brother's death, both emphatically denied offering any kind of deal to Martell. Defendant can only point to the fact that Martell's gun charges were dismissed a couple of months after he testified at defendant's trial. But the evidence shows that that case was dismissed because the complaining witness, who had retired and moved out of state, did not appear for the preliminary examination. To claim that the case was dismissed pursuant to a "side deal" is to engage in sheer speculation unsupported by any evidence.

Moreover, as the trial court properly recognized, the evidence of defendant's guilt outside of Martell's testimony was overwhelming. In addition to the testimony from the three eyewitnesses that placed defendant at the scene, there is the unbiased physical evidence. Defendant's cell phone was found in the middle of the street where the shooter stood, lending credence to the various testimonies placing defendant on Steel Street. Additionally, a silver Impala, with distinctive damage to the driver's side of the vehicle, was seen on surveillance video in the area at the time of the shooting, further corroborating the witnesses' testimonies. And that same vehicle was later found at defendant's house. Finally, defendant's admissions at trial, through his testimony, text messages, and police interrogation, show that he wanted to exact revenge on Martell and his associate, Washington. Pertinently, defendant was upset with Martell and Washington for whatever occurred the previous night.[12] Defendant testified that he learned from Smith where Martell and Washington could be found (on Steel Street) and expressed to Smith that he needed to get "a strap" and was going to "take care of [his] business." Although no evidence was presented as to what "a strap" meant, it is within the general populace's common knowledge to be slang for "a gun." And although motive was not required to be proven by the prosecutor, it nonetheless can provide context to what would otherwise be a seemingly illogical or out-of-the-blue crime. See also *People v Engelman*, 434 Mich 204, 223 n 28; 453 NW2d 656 (1990) ("Evidence of motive can be relevant to prove the commission of the *actus reus*. . . . Evidence of motive which suggests the doing of the act charged is always admissible.") (quotation marks, citations, and alterations omitted).

As a result, although the prosecution had a duty to disclose Martell's pending charges to defendant, there is not a reasonable probability that had the evidence been disclosed, a different result would have occurred. See *Chenault*, 495 Mich at 150. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for a new trial on this ground.

---

[12] Defendant testified that Martell and Washington "jumped out on me" the night before the shooting and Washington exposed himself and urinated in front of defendant's children.

Defendant also argues that he is entitled to a new trial because defense counsel was ineffective by failing to discover Martell's pending charges and use them to impeach him at trial. To succeed on a claim on ineffective assistance, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Trakhtenberg*, 493 Mich at 51. Even assuming defense counsel's performance was deficient, because "*Brady* materiality is assessed under the same 'reasonable probability' standard that is used to assess prejudice under [claims of ineffective assistance], we similarly conclude that the defendant cannot establish prejudice in order to prevail on his ineffective assistance of counsel claim." *Chenault*, 495 Mich 159 (citation omitted).

## VI. ADDITIONAL ARGUMENTS RAISED IN STANDARD 4 BRIEF

Defendant's Standard 4 brief raised five issues, including the alleged *Brady* violation. The other four issues will now be addressed.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 Brief, defendant appears to argue that defense counsel was ineffective for failing to: (1) subpoena his cell phone records, and (2) move for an evidentiary hearing regarding tampered evidence and coerced witnesses. We disagree.

## 1. PRESERVATION AND STANDARD OF REVIEW

A defendant preserves the claim of ineffective assistance of counsel by, among other things, raising the issue in a motion to remand for an evidentiary hearing. *Abcumby-Blair*, 335 Mich App at 227. Although defendant moved for an evidentiary hearing, and one was held, the subject matter of that hearing was not the instances of ineffective assistance raised in this issue. Therefore, the issue is not preserved. See *id*. When no evidentiary hearing is held on a claim of ineffective assistance, our review is limited to mistakes apparent from the record. *Lane*, 308 Mich App at 68.

## 2. ANALYSIS

Generally, to establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Trakhtenberg*, 493 Mich at 51.

Defendant first avers that his counsel should have subpoenaed the records for his cell phone. Defendant suggests that the data was important because it contained videos he made of the night before the shooting, which showed Martell and Washington engaging in criminal behavior. But, there was no need for a subpoena because defendant's phone was already in police custody, and all of its data was extracted. Further, there is nothing in the record to indicate that counsel did not view that data. Moreover, defendant seems to think that videos depicting Martell and Washington engaging in unlawful or threatening behavior the night before somehow is relevant to his defense for actions that occurred approximately seven hours later. It is not. The incident would only be relevant in a legal context to give defendant a motive for his actions—they in no way could

excuse his conduct. See *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002) (stating, among other things, that for self-defense, the action taken had to be *immediately* necessary). Therefore, even assuming that defense counsel did not view the videos, there is not a reasonable probability that the outcome at trial would have been different had counsel reviewed them.

Defendant next avers that trial counsel should have moved for an evidentiary hearing because evidence was being improperly suppressed and altered, and witnesses were being coerced. Defendant fails to adequately explain what specific evidence he is referring to. Earlier in his brief, he mentions that a detective "tampered" with Kimberly's statement to the police. Defendant does not cite anything in the lower court record to support this assertion; therefore, we need not review this issue. See *People v Jones (On Rehearing)*, 201 Mich App 449, 456-457; 506 NW2d 542 (1993) (mere assertion that a party's rights were violated, unaccompanied by record citations or cogent argument, is insufficient to present the issue to this Court). Nevertheless, even assuming that there was an issue with Kimberly's statement to the police, that statement was not admitted into evidence at trial, and defendant fails to explain how this "tampering" affected anything that occurred at trial.

Accordingly, defendant's claims of ineffective assistance of counsel have no merit.

## B. DEFENDANT'S RIGHT TO PRESENT A DEFENSE

In his Standard 4 brief, defendant further argues that he was deprived of his right to present a defense when the trial court did not allow him to testify fully. We disagree.

## 1. PRESERVATION AND STANDARD OF REVIEW

In this case, defendant never argued that his right to present a defense was impacted; therefore, this issue is not preserved. See *Heft*, 299 Mich App at 78. As previously stated, unpreserved constitutional issues are reviewed for plain error affecting defendant's substantial rights. *Burkett*, 337 Mich App at 635.

## 2. ANALYSIS

"Few rights are more fundamental than that of an accused to present evidence in his or her own defense." *Unger*, 278 Mich App at 249.

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purposes of challenging their testimony, he has the right to present his own witnesses to establish a defense. [*Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).]

But, "an accused's right to present evidence in his defense is not absolute." *Unger*, 278 Mich App at 250. A defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Yost*, 278 Mich App at 379 (quotation marks and citation omitted). "Such rules do not abridge an

-17-

accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998) (citation omitted).

At issue is the following exchange that occurred during defense counsel's examination of defendant:

> *Q*. Okay. So you didn't have any reason in your own mind to conduct a vendetta against Mr. Martell Alvin or Mario Harris, right?
>
> *A*. No, sir, I'm not that type of person. I'm not known for that. I—I—I'm in an abusive relationship myself. I don't put my hands on my child's mother or the woman I'm with. You know what I'm saying? I don't have no intentions to harm anyone or do anything wrong like this. I'm confused why I am here.
>
> *Q*. All right. You didn't do this, correct?
>
> *A*. I did not do this.
>
> *Q*. You can look them in the eye and say that?
>
> *A*. I'm innocent. I did not do this. I'm innocent. There's a lot going on. I'm in a love triangle.

At this point, the prosecutor objected, noting that defendant was testifying in a narrative and was nonresponsive to the question that was asked. The trial court sustained the objection and told defense counsel to ask his next question.

Defense counsel then asked, "Mr. Whitley, is there something that I've missed?" Defendant answered, "I feel like the situation that happened the night before, that it is causing a lot of confusion." The prosecutor objected to the form of the question, and the trial court sustained the objection, noting, "That's not a proper question." Trial counsel then asked if defendant took any violent action against Harris or Martell on the basis of whatever happened the night before, and defendant answered in the negative.

On appeal, defendant takes exception to not being allowed to provide a narrative response to counsel asking if there was anything that was missed. It is true that nothing in the rules of evidence precludes testimony in a narrative form. *People v Wilson*, 119 Mich App 606, 617; 326 NW2d 576 (1982). However, MRE 611(a) allows a trial court to exercise reasonable control over the mode of interrogating witnesses, *id.*, and provides as follows:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Although the trial court could have allowed defendant to wax on, the court did not abuse its discretion. Asking defendant if there was anything else "missing" was a very open-ended inquiry, making it unpredictable where the response would lead. It was reasonable for the trial court to require counsel to ask more specific or focused questions, and counsel followed up with what he thought was the pertinent question: as a result of what occurred the previous night, did defendant act against Martell?

Defendant has failed to establish any plain error with regard to his claim of being denied the right to present a defense. His counsel questioned him about the events, and he was allowed to testify regarding his innocence. The court simply did not allow extremely open-ended questions. Moreover, assuming there was any error, defendant cannot show that the error was outcome-determinative. As noted previously, whatever occurred the night before is largely irrelevant to defendant's defense. Accepting defendant's suggestion that Martell was involved in an illegal attack on defendant the night before, it would only lend credence to the prosecutor's theory of motive—contrary to defendant's position, it would not exonerate or justify defendant's action of shooting at Martell and Harris. See *People v Riddle*, 467 Mich at 127.

## C. DEFENDANT'S RIGHT TO DUE PROCESS

In his Standard 4 brief, defendant also cursorily argues that he was denied the right to due process when the prosecution, defense counsel, and trial judge all colluded against him. Defendant fails to explain what collusion occurred or what evidence is at the heart of this complaint. Accordingly, with no cogent argument, this issue is abandoned. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) (an appellant's failure to support assertions of error with meaningful analysis constitutes abandonment of the issue); *Jones*, 201 Mich App at 456-457.

## D. CUMULATIVE ERROR

Defendant further argues that the cumulative effect of the errors raised in his Standard 4 brief warrants reversal. Because we have concluded that defendant's Standard 4 brief has not identified multiple errors to aggregate, "a cumulative effect of errors is incapable of being found." *Mayhew*, 236 Mich App at 128.

Affirmed.

/s/ Christopher P. Yates
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney