*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL LEON STOKES,

        Defendant-Appellant.

UNPUBLISHED
November 17, 2025
2:25 PM

No. 368264
Wayne Circuit Court
LC No. 21-002832-01-FC

Before: RICK, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Defendant, Michael Leon Stokes, appeals as of right his jury-trial conviction of voluntary manslaughter, MCL 750.321. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to a term of imprisonment of 25 years to 25 years and one day. For the reasons provided below, we affirm defendant's conviction but remand for resentencing.

## I. BASIC FACTS

This case arises from the stabbing death of Siam Pye that occurred shortly after midnight on March 24, 2021. The altercation is completely captured on video.

At approximately 11:50 p.m. on March 23, 2021, defendant arrived at a strip mall located on West Grand Boulevard in Detroit and set his bike down near the sidewalk that abutted the road. A few minutes later, Pye, wearing a blue and white jacket, walked up to the strip mall. The video evidence next shows defendant and Pye standing near each other on the sidewalk near the main road. The two men spent several minutes engaging in conversation that appears to be somewhat animated at times. At 12:13 a.m., Pye walked away from defendant and into the parking lot. Defendant followed, and when Pye attempted to walk further away from defendant, defendant persisted in following. Defendant proceeded to close the distance between him and Pye, all while Pye continued to backpedal away from defendant.

Defendant produced a small can of pepper spray and attempted to spray Pye with it. Pye turned in reaction, and defendant pursued, continuing to use the spray. Pye attempted to move away, and when defendant continued, Pye attempted to take a swing at defendant. Undeterred,

-1-

defendant pursued Pye with the spray, and Pye attempted to move away and ended up with his back against the strip-mall building. With defendant continuing to spray the mace, Pye lunged toward defendant. Defendant pulled a knife out of his pocket and brandished it to Pye.[1] Pye and defendant proceeded to "square up" to fight, with defendant attempting to stab Pye multiple times. The fight culminated with defendant falling on Pye in the middle of the parking lot. The video appears to show defendant make a stabbing motion toward Pye's chest, while Pye was lying on the ground, and Pye does not move after that. Defendant then proceeded to his bike and left.

Pye passed away. An autopsy revealed that Pye suffered 11 different stab or cutting wounds, with the most serious one being the one in his chest that caused massive amounts of bleeding.[2] The medical examiner determined that Pye's cause of death was multiple stab wounds and that the manner of death was homicide.

While police detectives were talking with some of the store owners at the strip mall on March 26, 2021, defendant arrived on his bike. After one of the detectives made eye contact with defendant, defendant proceeded to leave the area. The detectives pulled defendant over not far from the strip mall and arrested him. Defendant had in his possession the same backpack that was seen in the video, and inside the backpack was a hat. The hat had blood on the outside of it, which tested positive for Pye's DNA. And the inside of the hat tested positive for defendant's DNA.

Sergeant Matthew Gnatek interviewed defendant after he was taken into custody. Sgt. Gnatek advised defendant of his constitutional rights and reviewed the form documenting those rights with him. Defendant read the form out loud and initialed next to each right and signed the bottom of the form. During the interrogation, defendant denied having any knowledge of the stabbing.

At trial, defendant asserted that he acted in self-defense. He claimed that while he and Pye were at the sidewalk, Pye accused him of taking his pills and that he was "going to take the money for the pills out of [defendant's] ass." According to defendant, after he pepper sprayed Pye, Pye declared, "Now, I'm killing your ass." Defendant further testified that when Pye charged at him, he saw what he thought was an object or weapon in Pye's hand. However, no such weapon or object was ever recovered from the scene or seen in the video.

The trial court provided the jury with an instruction regarding self-defense. Over defendant's objection, the trial court also provided the jury an instruction consistent with M Crim JI 7.18, stating:

---

[1] A knife cannot be discerned on the video supplied to this Court. However, defendant admits that he pulled the knife and brandished it to Pye.

[2] The 11 stab wounds were found on and about Pye's head, face, neck, arm, and chest. The medical examiner opined that the wounds to the arms could be considered "defensive."

[A] person who started an assault on someone else with a dangerous weapon cannot claim that he acted in self-defense unless he genuinely stopped his assault and clearly let the other person know that he wanted to make peace.

Then if the other person kept on fighting or started fighting, again, later, that the Defendant has the same right to defend himself as anyone else and could use force to save himself from immediate physical harm.

Although defendant was charged with second-degree murder, the jury convicted him of the lesser-included offense of voluntary manslaughter. This appeal followed.

## II. JURY INSTRUCTION

Defendant in his principal brief on appeal argues that the trial court erred by providing the jury with an instruction that was consistent with M Crim JI 7.18.[3] We disagree. Preserved claims of instructional error generally are reviewed de novo, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

A criminal defendant has the right to a properly instructed jury. *People v Spaulding*, 332 Mich App 638, 653; 957 NW2d 843 (2020). "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "The jury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v Montague*, 338 Mich App 29, 37; 979 NW2d 406 (2021) (quotation marks and citation omitted).

As previously indicated, the court instructed the jury regarding self-defense and provided the following additional instruction:

[A] person who started an assault on someone else with a dangerous weapon cannot claim that he acted in self-defense unless he genuinely stopped his assault and clearly let the other person know that he wanted to make peace.

---

[3] M Crim JI 7.18 states as follows:

A person who started an assault on someone else [with deadly force / with a dangerous or deadly weapon] cannot claim that [he / she] acted in self-defense unless [he / she] genuinely stopped [fighting / (his / her) assault] and clearly let the other person know that [he / she] wanted to make peace. Then, if the other person kept on fighting or started fighting again later, the defendant had the same right to defend [himself / herself] as anyone else and could use force to save [himself / herself] from immediate physical harm.

Then if the other person kept on fighting or started fighting, again, later, that the Defendant has the same right to defend himself as anyone else and could use force to save himself from immediate physical harm.

On appeal, defendant avers that the above instruction was improper because it presumes that defendant was the initial aggressor. Defendant claims that the evidence shows that he was not the initial aggressor because he was acting in self-defense when he both (1) sprayed Pye with pepper spray and (2) attacked Pye with a knife. Defendant's claim of error fails for two reasons. First, the instruction does not "assume" or presume anything.[4] It merely instructs the jury that *if* it finds that a defendant who initiated an assault with a dangerous weapon,[5] then that person cannot claim self-defense unless the person ceases the assault and communicates the desire to make peace to the other person. If that other person nevertheless continues the fight in light of the defendant's desire to make peace, then and only then is the defendant allowed to assert self-defense. The instruction leaves it to the jury's determination as to whether the defendant initiated an assault and whether the defendant used a dangerous or deadly weapon.

Second, an instruction is proper if it is supported by the evidence. *Id*. Defendant relies on his self-serving testimony that he was acting in self-defense, which thereby made him not the initial aggressor. Notably, the jury was not required to believe or accept that testimony. *People v Unger*, 278 Mich App 210, 228; 749 NW2d 272 (2008). Indeed, the jury had little choice but to disregard defendant's testimony because it was at odds with what was seen on the video of the events that evening. For instance, defendant testified that he initially used pepper spray on Pye because Pye said he was going to get the money for the pills defendant allegedly took from Pye "out of [defendant's] ass." But the video shows no sign of aggression on Pye's behalf. In fact, it is Pye who walks away from defendant from the sidewalk, where the "threat" allegedly was made, and it is Pye who continues to keep his distance from defendant while in the parking lot. Pye's behavior appears to be wholly inconsistent with someone who purportedly was being aggressive and threatening toward defendant. As a result, because the evidence supports a finding that defendant was the initial aggressor with a dangerous weapon, the jury instruction was proper. Importantly, although the evidence supports such a finding, the jurors ultimately were free to decide whether the circumstances described in the jury instruction applied.[6]

---

[4] Indeed, the only "presumption" that the jury was instructed on was the presumption that defendant is innocent.

[5] While defendant in the trial court first asserted that the mace or pepper spray used was not a dangerous weapon, defendant makes no such argument on appeal. Accordingly, that question is not before this Court.

[6] Defendant also argues that the trial court erred by not instructing the jury that it was the prosecution's burden to prove beyond a reasonable doubt that self-defense does not apply. But because this particular argument—which is distinct from the argument presented on the applicability of M Crim JI 7.18—is not contained in defendant's statement of the questions presented, it is abandoned, and we decline to address it. See MCR 7.212(B)(5); *People v McMiller*, 202 Mich App 82, 83 n 1; 507 NW2d 812 (1993).

## III.  ISSUES RAISED IN STANDARD 4 BRIEF

## A.  AMENDMENT OF NOTICE OF INTENT TO SEEK ENHANCED SENTENCE

Defendant argues that his sentence should be vacated because the prosecution's amendment of the notice to seek an enhanced habitual-offender sentence was untimely.  We agree that the amendment was not permissible under the law.

A trial court's decision on a motion to amend the information is reviewed for an abuse of discretion.  *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d 191 (2003).  A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes.  *People v Kroll*, 341 Mich App 217, 228; 989 NW2d 822 (2022).  A court necessarily abuses its discretion when it makes an error of law.  *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012).

MCL 769.13(1) provides:

> In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

Here, defendant was arraigned on May 19, 2021.  On May 27, 2021, the prosecutor filed an information with notice of intent to enhance sentence.  The information listed that defendant was being charged with one count of second-degree murder and that the prosecution was providing notice that it was seeking enhanced sentencing for defendant being a third-offense habitual offender under MCL 769.11.  The information was filed only eight days after the arraignment and therefore was timely under MCL 769.13(1).

What defendant takes issue with is that nearly two years later, the prosecution, pursuant to MCR 6.112(H), sought to amend the information to reflect that it was seeking an enhanced sentence for defendant being a fourth-offense habitual offender.  Defendant opposed the request because it occurred one week before trial was scheduled to start.  Defendant acknowledged that MCR 6.112(H) permits amendment at any time, but he maintained that the proposed amendment would unfairly surprise and prejudice him.

At the motion hearing, the trial judge, Wayne Circuit Court Judge Christopher M. Blount, first addressed his past history with the victim, Pye.  Judge Blount acknowledged that Pye had worked in the city of Detroit's Recreation Department and had been his coworker for many years.  The judge concluded that recusal was the best option, and both defense counsel and defendant agreed.  The trial judge then asked the parties if they wanted him to rule on the issue of the amended

information, and both parties agreed.[7]  The trial judge granted the prosecution's motion, finding that there was little, if any, prejudice to defendant at trial.  The judge also noted that no one is more aware of defendant's criminal history than defendant, himself.  The case was subsequently reassigned to a different judge, and trial commenced almost four months later.

At the outset, to the extent defendant argues that the order allowing amendment is invalid or otherwise infirm because Judge Blount, who indicated that he should recuse himself, granted the prosecutor's request, that argument is waived.  Defense counsel expressly agreed to allow Judge Blount to render his decision on the motion, despite the judge indicating his desire to recuse himself.  Accordingly, defendant has waived any argument related to the appropriateness of Judge Blount deciding on the motion.  See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

Turning to the merits of the trial court's decision, under MCL 767.76,

An information may be amended at any time before, during or after trial to cure any defect, imperfection, or omission in form or substance, including a variance between the information and the proofs, as long as the accused is not prejudiced by the amendment and the amendment does not charge a new crime.  [*People v Higuera*, 244 Mich App 429, 446; 625 NW2d 444 (2001), citing MCL 767.76.]

Similarly, MCR 6.112(H) provides, in pertinent part:

The court before, during, or after trial may permit the prosecutor to amend the information or the notice of intent to seek enhanced sentence unless the proposed amendment would unfairly surprise or prejudice the defendant.

This provision clearly allows for *amendment* of an intent to seek enhanced sentence at any time.  Thus, the fact that the amendment occurred outside the initial 21-day deadline enunciated in MCL 769.13(1), by itself, is not dispositive.

However, although not cited by any party either in the trial court or here on appeal, there is caselaw showing that the amendment was not permissible.  A prosecutor that desires to file a supplemental information alleging that a defendant is a habitual offender must do so "promptly." *People v Ellis*, 224 Mich App 752, 754; 569 NW2d 917 (1997), citing *People v Fountain*, 407 Mich 96, 98; 282 NW2d 168 (1979).  MCL 769.13(1) "reflects a bright-line test for determining whether a prosecutor has filed a supplemental information 'promptly.' " *Ellis*, 224 Mich App at 755.

This Court has harmonized the 21-day period provided in MCL 769.13(1) for the initial notice of intent for seeking an enhanced sentence with the open-endedness described in MCL 767.76 and MCR 6.112(H) for seeking amendments.  This Court determined that, while

---

[7] The attorneys and the trial judge had discussed the matter regarding the amendment of the information earlier in chambers, where the judge indicated his decision.  Notably, the trial judge made his decision on that issue *before* learning that the victim was someone the judge knew.

-6-

amendment is permissible after that statutory 21-day period, such amendment may not include additional prior convictions that would increase a defendant's potential sentence. *People v Siterlet*, 299 Mich App 180, 186; 829 NW2d 285 (2012), aff'd in part and vacated in part on other grounds 495 Mich 919 (2013).[8]

This Court's opinion in *Ellis* also is on point. In *Ellis*, the prosecution timely and promptly filed a supplemental information charging the defendant with being a second-offense habitual offender. *Ellis*, 224 Mich App at 755. Approximately six weeks later, i.e., outside the statutory 21-day window, the prosecutor filed an amended supplemental information that alleged two additional prior convictions, changing the habitual-offender status from second-offense to fourth-offense. *Id*. This Court held that such amendment could occur outside of the statutory period "only to the extent that the proposed amendment does not relate to the specific requirements of MCL 769.13, i.e., the amendment may not relate to additional prior convictions not included in the timely filed supplemental information." *Id*. at 757. The Court explained that "[t]o hold otherwise would be to permit prosecutors to avoid making the necessary 'prompt' decision regarding the level of supplementation, if any, they wish to pursue and would materially alter the 'potential consequences' to the accused of conviction or plea." *Id*.

Additionally, while relying on *Ellis*, this Court in *People v Hornsby*, 251 Mich App 462, 472; 650 NW2d 700 (2002), noted that "a recognized difference exists between an amendment of a notice to seek sentence enhancement that attempts to impose more severe adverse consequences to a defendant and one that does not." As a result, the *Hornsby* Court held that because the amendment outside the statutory period in that case did not otherwise increase the potential sentence, it was permissible. *Id*. at 472-473.

As the prosecution acknowledges, when applying the above principles, it is clear that the trial court in the present case erred as a matter of law when it granted the prosecutor's motion to amend the notice of intent. There is no dispute that the initial, timely notice alleged that defendant was a third-offense habitual offender pursuant to MCR 769.11 and that the amended notice—filed two years later—alleged that defendant was a fourth-offense habitual offender, MCL 769.12. As *Ellis* makes clear, any amendment done after the statutory timeline that increases the potential sentencing of defendant is contrary to the mandates of MCL 769.13(1) and is not permissible.

Therefore, we remand for defendant to be resentenced as a third-offense habitual offender, i.e., what the initial, timely notice of intent to seek enhanced sentence provided.

## B. TESTIMONY OF WITNESS

Defendant next argues that testimony from a police detective was inadmissible. We disagree.

---

[8] On our own motion, we invited the parties to file supplemental briefing addressing cases such as *Ellis* and *Siterlet*. *People v Stokes*, unpublished order of the Court of Appeals, entered October 17, 2025 (Docket No. 368264). In its supplemental brief, the prosecution conceded that the binding caselaw entitles defendant to resentencing.

Because defendant did not object to the testimony, the issue is not preserved. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). We review unpreserved issues for plain error affecting defendant's substantial rights. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). "Under the plain-error rule, defendant bears the burden to prove (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279-280; 989 NW2d 832 (2022) (quotation marks and citations omitted). Even if satisfied, reversal still is not warranted unless "the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence." *Id.* at 380.

Detective Jelani Dew testified how he saw defendant at the check-cashing store two days after the stabbing and apprehended him. Det. Dew also testified that he had experience working with the police department's Violent Gang Unit and was trained specifically for gangs located in the west side of Detroit. When asked about the color blue being related to gangs, Det. Dew stated, "Blue is typically worn by a gang known as the Crips. There are several entity gangs that follow that, but predominantly that is the color of choice for that particular gang." When asked if there was any significance to a white bandanna, Det. Dew replied that there was not. He further stated that Pye's appearance that night did not carry the hallmark traits of being a gang member.

Defendant asserts that the Det. Dew's testimony related to gang attire is inadmissible. But he does not adequately explain why. From Det. Dew's experience and training, he had personal knowledge of west-side gangs, which is the key requirement.[9] See MRE 602. Moreover, assuming Det. Dew's gang-related testimony was inadmissible, defendant has failed to show how the erroneous admission of this evidence affected the outcome of the trial. The video evidence is abundantly clear that defendant was the aggressor through the entire incident, with Pye attempting to back away from defendant numerous times. This video evidence completely undermines defendant's claim of self-defense. Additionally, although Det. Dew discounted the significance of Pye's white bandanna, his testimony could have been viewed as *assisting* defendant because Pye was wearing a blue jacket, a color Dew attributed to certain gangs. Accordingly, defendant cannot show that but for the testimony, he would not have been convicted.

Defendant also argues that his trial counsel was ineffective by failing to object to Det. Dew's testimony. Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Generally, to establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of

---

[9] Det. Dew was not admitted as an expert at trial. However, had an objection been raised in the trial court to his testimony, then the prosecution may have sought to have him recognized as an expert in Detroit west-side gangs because of his experience. MRE 702 provides that a witness can be qualified as an expert "by knowledge, skill, experience, training, or education." Det. Dew's experience and training would appear to satisfy these requirements.

reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). However, such performance must be measured without the benefit of hindsight. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

This issue can be dispensed with simply because, assuming counsel's performance was deficient and assuming trial counsel had successfully raised an objection to Det. Dew's testimony (resulting in the testimony not being admitted), there is not a reasonable probability that the outcome of the trial could have been different.[10] Whether the jury thought Pye was a gang member (or whether the jury thought defendant perceived Pye as a gang member) was largely irrelevant. Even if Pye were a gang member, that does not give defendant the right to pursue and attack him. The video evidence showed that defendant was the clear aggressor in the altercation and that Pye consistently was attempting to keep his distance from defendant. As a result, defendant's claim of self-defense had virtually no chance of prevailing. See also *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002) ("[T]he touchstone of *any* claim of self-defense, as a justification for homicide, is *necessity*.").

## C. RIGHT TO PRESENT A DEFENSE

Defendant next argues that he was denied the right to present a defense when the trial court stopped him from testifying about Pye's character. We disagree. We review this unpreserved issue for plain error affecting defendant's substantial rights. *Hanks*, 276 Mich App at 92.

"Few rights are more fundamental than that of an accused to present evidence in his or her own defense." *Unger*, 278 Mich App at 249.

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purposes of challenging their testimony, he has the right to present his own witnesses to establish a defense. [*Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).]

"However, an accused's right to present evidence in his defense is not absolute." *Unger*, 278 Mich App at 250. A defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008) (quotation marks and citations omitted); see also *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). "Such rules do not abridge an accused's right to present a defense so long as they are

---

[10] If it is easier to dispose of a constitutional claim of ineffective assistance of counsel on the ground of a lack of prejudice, that course should be followed. *Strickland*, 466 US at 697.

not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998) (citation omitted).

Defendant avers that there were three instances where the trial court admonished defendant from answering beyond the pending question and venturing into a narrative. However, his citations to these alleged instances only result in two instances being identified.

Defendant asserts that he was stopped from presenting character evidence of Pye pursuant to MRE 404. MRE 404(a)(2) allows for evidence of character of an alleged victim of homicide:

> When self-defense is an issue in a charge of homicide, evidence of a trait of character for aggression of the alleged victim of the crim offered by an accused, or evidence offered by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a charge of homicide to rebut evidence that the alleged victim was the first aggressor[.] [MRE 404(a)(2).]

However, defendant admitted that he did not know Pye, and there was no evidence that defendant had even heard of him before the night of the stabbing. Given this, it would be impossible for defendant to offer opinion testimony on Pye's character. See MRE 405(a); MRE 602.

Moreover, in the instances that defendant has identified in which the trial court stopped defendant from engaging in a narrative discussion, defendant never was attempting to discuss Pye's character. The first cited instance during this exchange:

> *Q*. Yes. Yes. Yes. Why should the jury believe you today?
>
> *A*. Well, because my testimony is supported by the video.
>
> *Q*. Is it what happened?
>
> *A*. It's exactly what happened.
>
> *Q*. In your mind?
>
> *A*. Well, it's what happened on the video.
>
> *Q*. You have told them things that aren't on the video, meaning, you have told them what your mind was.
>
> *A*. Well, if -- if you --
>
> *Q*. Does my question make sense?
>
> *A*. Yes. Your question makes sense. Absolutely. If you'd looked at a person and you judge him by the way that they look, if this Prosecutor -- the Prosecutor --

The prosecution objected, and the trial court instructed defendant "to stop making speeches" and to simply answer the posed questions.

The second cited instance occurred shortly after this line of questioning. Defense counsel asked defendant if he found himself making opinions about Pye based on what Pye said. Defendant replied that he did make opinions based on what Pye said and how Pye looked. Counsel then asked, "At the time that you acted, . . . did you believe that you had to --" and defendant interjected, "Absolutely. It would have been unreasonable for me to think --" The court again reminded defendant to simply answer the question and not "make speeches."

For the first occurrence, it is not entirely clear what defendant was going to say, but he was referring to the prosecutor, perhaps creating a hypothetical related to him. Anything related to the prosecutor himself is wholly irrelevant to whether defendant acted in self-defense on the night of the stabbing. Thus, the testimony was inadmissible. See MRE 402. Further, "[i]t rests within the sound discretion of the trial judge to determine whether a witness will be required to testify by question and answer or will be permitted to testify in narrative form." *People v Wilson*, 119 Mich App 606, 617; 326 NW2d 576 (1982), citing MRE 611(a). In this instance, the record shows that the trial court properly exercised its discretion to not allow defendant to banter on about irrelevant topics. Defendant was simply asked whether he had told the jury things that were not apparent from the surveillance video. There was no reason for defendant to implicate the prosecutor, and the court properly limited the testimony. The court's application of the rules of evidence was not arbitrary and did not deny defendant the right to present a defense.

In the second instance, defendant attempted to describe to the jury what is "reasonable," which was not responsive to the posed question. Accordingly, the court again properly exercised control of the mode and order of interrogating the witness. See MRE 611(a). Moreover, what defendant thinks is "reasonable" is not relevant and not admissible. See MRE 402. Reasonableness is an objective standard, not subjective. See *Ohio v Robinette*, 519 US 33, 39; 117 S Ct 417; 136 L Ed 2d 347 (1996) ("Reasonableness . . . is measured in objective terms by examining the totality of the circumstances."); *Krohn v Home-Owners Ins Co*, 490 Mich 145, 159-160; 802 NW2d 281 (2011); *New Covert Generating Co, LLC v Covert Twp*, 334 Mich App 24, 91; 964 NW2d 378 (2020).

In sum, defendant has failed to show how he was denied the right to present a defense. Defendant maintains that he wanted to present evidence of Pye's "character," but defendant having just met Pye, had no such knowledge.[11] Additionally, the trial court's admonishments were in response to defendant providing irrelevant testimony and failing to answer posed questions. The

---

[11] To the extent defendant asserts that he should have been able to mention that a person who wears Tupac-related gear is associated as being a gang member, he was not denied that opportunity and stated as much at trial. To be clear, such testimony is not "character" evidence under the rules of evidence, but defendant nevertheless was allowed to discuss what he saw and how it affected how he viewed Pye.

court's rulings were consistent with the rules of evidence, and a defendant must comply with established rules of procedure and evidence. *Yost*, 278 Mich App at 379.

Defendant also argues that his trial counsel was ineffective by failing to object to the trial court's rulings. Because the trial court did not err by refusing to allow defendant to discuss irrelevant matters and enter into narrations only tangentially related to the posed question, any objection by trial counsel would have been futile, and counsel does not render ineffective assistance by failing to make a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## D. ADMISSION OF INTERROGATION VIDEO

Defendant also argues that he is entitled to a new trial because the video of the police's interrogation of him was improperly admitted into evidence. We disagree.

At the outset, defendant has waived this issue. When the prosecutor sought to admit the video into evidence, defense counsel stated, "Judge, I have no objection to the admission. Follow-up on cross-examination." Trial counsel informing the court that he had no objection to the admission of evidence constitutes a waiver, and waiver extinguishes any error. *People v Johnson*, 315 Mich App 163, 193; 889 NW2d 513 (2016).

Defendant alternatively claims that his trial counsel was ineffective by failing to object to the admission of the interrogation video, but that argument also is without merit. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), citing *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant has not established the factual predicate for his claim of ineffective assistance. He identifies nothing in the lower-court record that indicates that there was an initial interrogation with the police in which he invoked his right to remain silent.

## E. FAILURE TO INVESTIGATE

Defendant argues that his trial counsel was ineffective by failing to investigate and present evidence of an assault and robbery defendant suffered near the same location as the stabbing. We disagree.

Defendant has not established the factual predicate for his claim of ineffective assistance. He identifies nothing in the lower-court record that indicates what information he supplied to trial counsel that counsel did not adequately pursue. See *Carbin*, 463 Mich at 600 (stating that a defendant has the burden to establish the factual predicate for a claim of ineffective assistance).

Moreover, there is not a reasonable probability that, had such further investigation taken place, the outcome of the trial would have been different. Defendant avers that such an investigation would have supported his claim of self-defense because it would have shown that his fear of Pye was real (even though Pye was not the person who previously assaulted defendant). As noted previously, defendant's actions as captured in the surveillance video are wholly

inconsistent with one claiming self-defense.  As such, any evidence purporting to buttress that defense would not have had a reasonable probability of affecting the outcome of the trial.


## IV.  CONCLUSION

We affirm defendant's conviction.  But because the amendment of the notice to seek an enhanced sentence was contrary to law, we remand for resentencing.  Specifically, defendant is to be resentenced as a third-offense habitual offender.  We do not retain jurisdiction.


/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado